H. J. LEAHY v. THE STATE.

No. 11078.   Delivered October 24, 1928.
Rehearing denied February 6, 1929.
Second Rehearing denied February 27, 1929.

The opinion states the case.

*E. H. Lawhon* of Taylor, *H. S. Bonham* of Beeville and *Arnold & Cozby* of San Antonio, for appellant.

*Harry Dolan,* County Attorney of Williamson County, *Wilcox & Graves, Crain & Hartman* of Georgetown, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—The offense is murder; the penalty, death.

The deceased, Dr. J. A. Ramsey, was a practicing physician in the town of Mathis. On the late afternoon of May 20, 1926, one Roberto Martinez appeared at the residence of deceased and represented to him that his sister-in-law was sick with appendicitis and requested him to go with him to see her. The two departed to-

gether in compliance with such request shortly before nine o'clock, the deceased going in his Dodge car. This was the last time Dr. Ramsey was seen alive. A day or two later his wife received a post card in his handwriting informing her that he had to go to Beeville with' a patient and that he might have to go on to San Antonio. As time went by without his return his family and the community became alarmed and suspicion fastened itself upon appellant.

The deceased, Ramsey, had purchased about a thousand acres of land formerly owned by the Leahy family from a mortgage company' which had theretofore foreclosed on same. This. was followed by ill will upon the part of appellant toward deceased, which found expression in many statements testified to by witnesses, showing his hostility toward deceased prior to his disappearance. A substantial reward was offered by the wife of Dr. Ramsey for his return and appellant had a contract drawn and presented to Mrs. Ramsey agreeing to return the body of Dr. Ramsey, dead or alive, within eighteen months for a consideration of $10,000. Upon this contract being changed by her, limiting ·the time to ten days and to the payment of the money only if Dr. Ramsey were produced alive, appellant rejected the contract. Immediately preceding this he had delivered to his supposed friend and co-worker after the reward, a Mr. Dubose, a ticket for Dr. Ramsey's car, showing the same was stored in the A B C Garage at San Antonio. The car was recovered. Considerable maneuvering occurred between Leahy and Dubose, as testified to by the latter, not necessary to be detailed but wholly inconsistent with the innocence of appellant. About August, 1926, the Mexican, Roberto Martinez, was arrested by officers just after he had swum the Rio Grande river from Old Mexico. A few hours thereafter he confessed to his complicity with appellant in the murder of Dr. Ramsey. He led the officers the next morning to a secluded spot in the brush about six miles from Mathis where from a shallow grave there was exhumed the body of deceased. Martinez testified on the trial that about five days before the murder of Dr. Ramsey he was employed as a chauffer by appellant in the town of Laredo, Texas; that he had never seen appellant but one time prior to this; that he went with appellant to San Antonio from Laredo, and from there back to Mathis, where he stayed at a restaurant belonging to Euphemia Lemos, where he had left his pistol and pants; that on the evening of May 20, appellant asked him to lure Dr. Ramsey away with the tale that his sister-in-law was sick with appendicitis; that

he did so in compliance with appellant's request; that he and appellant the day previous had dug a hole shaped like a cistern at the spot where Dr. Ramsey's body was exhumed, using a peculiar shaped hoe in the operation; that Dr. Ramsey was marched by appellant to this hole on the night of May 20, was struck with a blunt instrument, gasoline poured down his throat and after being placed in the hole, his throat was slit with a dirk knife. The hole was covered up, a rat's nest placed on it to hide its identity, and on the same night he, Martinez, went to San Antonio and placed Dr. Ramsey's car in the A B C Garage, taking the ticket with him to Laredo to the home of one Maria Cortez. To this place appellant came not long after the murder of Dr. Ramsey and Martinez being sick in bed, Maria Cortez delivered to him the ticket to Dr. Ramsey's car. It was shown by a Mexican woman that she washed some bloody clothes corresponding in size to those worn by appellant the next day after the killing at the Leahy home. Blood was found on the clothing of deceased. It is not disputed that Martinez and appellant were together around Mathis shortly prior to the homicide. A blacksmith testified that shortly prior to Dr. Ramsey's disappearance he changed a hoe into one of a peculiar shape. This was shown to correspond in appearance to the one Martinez described as being used to round out the peculiar shaped hole in which Dr. Ramsey was found buried. The blacksmith further testified that appellant told him he was having the hoe made for his mother, but she testified she had never seen the hoe. The appellant denied any complicity in the killing of Dr. Ramsey and introduced witnesses to prove a complete alibi.

It is insisted that the evidence is insufficient to corroborate the testimony of the accomplice, Martinez, as to the actual presence of appellant at the scene of the homicide. It is not required that the corroboration should be conclusive or that it alone be sufficient to establish the guilt of accused. Grice v. State, 298 S. W. 597, and authorities there cited. Nourse v. State, 2 Tex. Crim. App. 317. Nor is it required that such corroborative testimony consist of direct evidence only. It has been said:

"There is no doubt but that the corroborative evidence may be circumstantial, provided it otherwise fills the measure of the law as laid down in Art. 801, supra, and the Court may with propriety so instruct the jury." Walker v. State, 94 Tex. Crim. Rep. 660.

Naturally the State was unable to produce a witness not connected with the crime who saw its horrible details and was forced to resort as is usually the case to proof of circumstances. It de-

volved upon the State to show that the death of deceased had occurred by criminal violence inflicted by someone. Lovelady v. State, 14 Tex. Crim. App. 545. Follis v. State, 51 Tex. Crim. Rep. 186. Hernandez v. State, 8 S. W. (2nd) 949. The State proved this, we think, abundantly and conclusively.

The only issue remaining under the law was the direct criminal connection of appellant with such death. The accomplice testified that appellant had deceased sign several papers before he murdered him. It was the State's theory that one of these was the post card subsequently received by Mrs. Ramsey, wife of deceased, who testified that same was in his handwriting but that it was not his usual handwriting. The State's theory further was that one of the other papers was a deed to the above mentioned thousand acres of land. Evidence was introduced that appellant had written letters and had same copied and signed by others to Dr. Ramsey asking if he claimed or would claim this land as his homestead, to which Dr. Ramsey had more than once replied in the negative. This was introduced to show that appellant intended to procure a deed from Dr. Ramsey in the manner he did without the signature of his wife and that he expected to use these statements of Dr. Ramsey in writing that did not and would not claim same as a homestead to establish title without her signature. His action in trying to procure a contract to pay $10,000 for the dead body of deceased at a time when all good citizens should have gladly donated their services, his various maneuvers with witness Dubose, the blood on his clothes, the fact that he was in possession of the automobile of the deceased, his close association with the Mexican, Roberto Martinez, immediately preceding the homicide, his studious and persistent attempt to circulate false rumors to the effect that Dr. Ramsey had gone off with some girl, that he and his wife did not get along, and that she was unduly intimate with another, naming him, all these, with other circumstances, point an accusing finger at appellant and were sufficient, we think, to meet the demands of the law as to the corroboration of Martinez.

In passing upon the sufficiency of the corroborative testimony we have stated the testimony only which most strongly showed appellant's guilt. There are certain aspects of the Martinez testimony not related here which might have been regarded by the jury as discrediting this witness but the law has vested the jury with the sole right to pass on the credibility of the witness with which function this Court has neither the legal right nor the inclination to in-

terfere. The jury having foreclosed this issue against appellant, we state none of such testimony, as we are powerless under the law to interfere if we desired.

The transcript contains over four hundred pages. A great multitude of law questions have been presented by appellant. Many of them were undoubtedly preserved out of an abundance of precaution and are so obviously without merit that we do not feel it necessary to refer to or discuss them.

The Court submitted the question of whether or not the witness E. M. Dubose was an accomplice and gave a charge on accomplice testimony. A sufficient answer to all the objections urged by the appellant to this charge is that the record, in our opinion, fails to raise such an issue and the instruction of the Court was therefore favorable to appellant. We find no evidence in the record that Dubose was in any way connected with the instigation of the crime or its perpetration. His only connection was as a detective in trying to get evidence against appellant. Under these circumstances such a charge is not demanded. Wright v. State, 7 Tex. Crim. App. 574; Savage v. State, 170 S. W. 730. Nor do we believe that there was any testimony raising the issue that either Maria Cortez or Euphemia Lemos were accomplices and the court correctly refused to submit such an issue. As to witness Roberto Martinez, the court charged the jury as follows:

"And, in this connection you are instructed, as a matter of law, that the witness, Roberto Martinez, is an accomplice, and you cannot convict the defendant upon the testimony of the said Roberto Martinez alone unless you first believe that his testimony is true, and shows, beyond a reasonable doubt, that the defendant is guilty of the offense charged; and even then you cannot convict the defendant upon his testimony unless you further believe that there is other evidence in the case, outside of, other than, and independent of the testimony of said accomplice, and corroborative thereof, tending in some material matter, to connect the defendant with the offense committed, if any; and in this connection you are further instructed that the corroboration, if any, is not sufficient if it merely shows the commission of an offense, but it must go further, and in some material matter, tend to connect the defendant with its commission, and even then you cannot convict the defendant, in any event, unless you are satisfied from all evidence in the case beyond a reasonable doubt that he is guilty."

This charge is in practically the identical language of Oates v. State, 149 S. W. 1194, which has been many times approved. The only criticism of this charge which the Courts have made so far as we are aware is in the use of the word "alone." This should have been omitted. However, the testimony of the accomplice shows a complete offense by appellant without the aid of any other evidence and if believed would leave no reasonable doubt of guilt and the corroboration, in our opinion, being sufficient, this Court will not reverse because of the use of this word. Abbot v. State, 94 Tex. Crim. Rep. 36. See also Henderson v. State, 97 Tex. Crim. Rep. 253. We think this charge substantially complies with the requirements of such a charge laid down in Standfield v. State, 84 Tex. Crim. Rep. 437. See also Brown v. State, 57 Tex. Crim. Rep. 576. Stovall v. State, 104 Tex. Crim. Rep. 217. The question is exhaustively discussed in the authorities cited, and we do not feel able to add anything to what has already been said on the correctness and elements of a charge on the corroboration of an accomplice.

By bill of exception No. 52 it is made to appear that the District Attorney propounded to Sheriff Key the following question: "Has the defendant ever told you the whereabouts of Roberto Martinez outside of the time he was confined in jail, has he ever told you the whereabouts of Roberto Martinez?" To which he answered he had not. It is insisted this testimony was not material and was proof of statements made while appellant was in custody in violation of the statute. The record shows that many conversations were had with Leahy, the appellant, during the time of the investigation of the disappearance of Dr. Ramsey and it further shows that Martinez had theretofore been employed by appellant and that appellant actually knew of Martinez's whereabouts a part of the time at least after Dr. Ramsey's disappearance. The fact that he remained silent as to the whereabouts of the man with whom deceased was last seen and who was being vigorously sought was a circumstance, we think, of a criminative character provable against appellant. It is not shown that any such statement was ever asked about while appellant was in custody. We do not indulge presumptions against the correctness of the trial court's rulings. In the absence of some showing to the contrary, we will presume that any statements testified to were made at a time and place and under circumstances which render them admissible.

The effect of bill of exception No. 46 and some of the others is to question the right of the State to require appellant to state what

he had told his lawyers. The substance of these bills shows that appellant was asked when was the first time he told who he got the car check from. None of these bills show that witness was required to disclose any confidential communication made to his attorneys, and all of them pertaining to this matter are overruled.

It is urged that the Court erred in permitting the State to ask witness Martinez if he had ever been offered any immunity, to which the witness replied: "There has not been anyone that has told me anything." This occurred on redirect examination after a vigorous cross-examination in which an effort was made to discredit the witness and to show that his confession was not voluntary and his testimony false. We think, under the circumstances, the statement was admissible.

Testimony was introduced as heretofore indicated that Martinez stayed at a restaurant operated by Euphemia Lemos and that he left his pants and pistol there. It is further shown that he went back to this place and got these articles and that he claimed them. His getting them and what he said about them to the officers in appellant's absence, it is claimed, was res inter alios acta and were hearsay statements in the absence of defendant. This is undoubtedly correct but their only effect was to prove and establish the presence of the witness Martinez if he had ever been offered any immunity, to which was an undisputed issue, same being testified to by appellant himself and we cannot perceive how any prejudice could arise from testimony upon an issue that was conclusively proven by witnesses and admitted as true by the appellant.

By bill No. 38 complaint is made of the admission of evidence of the testimony of Mrs. Ramsey to the effect that her relations with the Doctor were pleasant and congenial and that they did not live like cats and dogs and further by bill No. 39 as to whether or not Dr. Ramsey ever evidenced "dissatisfaction to you in any way in his married life," also objection was made to the answer of Mrs. Ramsey that Dr. Ramsey was not a man who would run away with a 14, 16, or 18 year old girl and that she knew him to be a clean, honorable gentleman. This testimony was admitted to show the falsity of appellant's statements made as to these matters after Dr. Ramsey's disappearance. If appellant were trying to throw the officers off the track or if he were making false statements showing ill will and malice toward Dr. Ramsey, assuredly same are provable against him. Probably part of the statement "that she knew him to be a clean, honorable gentleman" was inadmissible but it came in response to a material question and part of the answer to such

material question was admissible and no motion was made to strike the inadmissible portion, even if it be conceded that it was prejudicial.

By special charge No. 3 the appellant sought to have the jury instructed in substance that it was no violation of the law for appellant to have attempted to collect or obtain any reward for the apprehension of the person responsible for the disappearance of Dr. Ramsey and that if the jury believed that after the said Dr. Ramsey disappeared the appellant conceived the idea of procuring a reward for producing either the person responsible for his disappearance or the body of said Dr. Ramsey, then the jury could not consider such acts, if any, as a corroboration of the testimony of the witness Martinez. This appears to us to be a matter for argument to the jury that had no place in the Court's instructions. It singled out and emphasized certain testimony, was an invasion of the duties placed by law with the jury and was upon the weight of the evidence. Dunn v. State, 263 S. W. 616; authorities collated in Vernon's C. C. P. (1925), Art. 658, Note 127. "A charge of the Court which is in effect a philosophic disquisition upon the force and nature of a particular species of evidence amounts to an invasion of the province of the jury and is error." Walker v. State, 13 Tex. Crim. App. 618. We think this charge requires no analysis to demonstrate that it was improper and that the Court correctly refused to give it.

The correctness of the Court's charge presenting the defense of alibi is vigorously assailed. The particular part under attack is in the following language:

"And in this connection you are further instructed that if you believe from the evidence that at the time the murder, if any, was committed, that the defendant, H. J. Leahy, was at his home or was at any other place than the place of the commission of the murder, if any, or if you have a reasonable doubt thereof, you will acquit the defendant."

A charge in the following language has been approved many times:

"If you should entertain a reasonable doubt as to the presence of the defendant at the time and place where the offense is alleged to have been committed, you will acquit the defendant." Jaggers v. State, 104 Tex. Crim. Rep. 177, and authorities there cited.

The Court's charge was rather inaptly worded but it seems to us to be sufficient to protect the appellant. It has been said of an alibi charge that "a charge though in some particulars obnoxious to

criticism but which taken together could not have misled the jury is not ground for reversing the judgment." Boothe v. State, 4 Tex. Crim. App. 214. While this charge submits to the jury the issue of a reasonable doubt as to the presence of the appellant at home rather than at the place of the offense, the distinction between the two is more apparent than real. This submitted appellant's defense practically as it came from the mouth of his witnesses. We think the language of the judge in the Jaggers case, supra, more appropriate, but we are not able to believe that the language of the Court quoted above could have misled the jury as there is not to our mind any real distinction between the charge which appellant claims should have been given and that which was actually given.

To establish his defensive alibi the appellant introduced one W. B. Boyd, who, among other things, testified that he saw appellant at his home in the town of Mathis about nine o'clock on the night of May 20, 1926, which was the night and about the hour of the night the murder of Dr. Ramsey is claimed to have occurred. He fixed the date particularly from a check he gave on an Alice bank to one Coffin for cattle which was dated May 20, 1926. This check was introduced in evidence. On the back of this check was the indorsement: "Pay to the order of any bank, banker or trust company. May 20," with the numerals "30–2," and the name of the bank not shown. After the introduction of this check the State introduced a witness to show that the characters "30–2" was the transit number of the Alamo National Bank of San Antonio, this in order to prove that such check must have been given before May 20, 1926, as it could not have been in the San Antonio bank on such date, especially since Boyd testified "I gave this check to A. B. Coffin about six o'clock in the afternoon of the 20th day of May, A. D. 1926, after the banks were closed. Te banking hours were over at the time I gave the check to Mr. Coffin." This check also bore the indorsement: "Pay to the order of any bank, banker or trust company. May 19, 1926. Previous indorsement guaranteed. First State Bank, Mathis, Texas." To show that the transit number appearing on this check was that of the San Antonio bank, W. L. Price, a banker of Williamson County, was placed upon the stand by the State and over objection testified that it bore the transit number of the Alamo National Bank of San Antonio. His testimony in substance shows that he had no personal knowledge whatever of the transit number of such bank but that he had gotten his information from a register published and gotten out by the Union National Bank of Houston and purchased by his bank, which was

a book published for the benefit of bankers, purporting to show the transit number of all banks in Texas and which was the book recognized by the banks of Texas as correct; that the banks in Texas only used one transit number; that he did not personally know whether the register was correct or not. Many objections were made to this testimony, chief of which was that the contents of this register were hearsay and not shown to be authentic or correct.

The theory of the rule against the admission of hearsay statements rests primarily upon the reason that cross-examination of the witness making such statements is not possible to test their accuracy, motives behind them, and so forth; but if such statements appear to be free from such risks and to come from a source and under such circumstances as to constitute a guaranty against inaccuracies and untrustworthiness, they may constitute an exception to the hearsay rule. Illustrative of exceptions to the rule of the inadmissibility of hearsay statements is found in the admission of railway time tables, Western Union Telegraph Co. v. Gilliland, 130 S. W. 212; mortality tables, Railway Co. v. Davis, 262 S. W. 923; rules of master car builders' associations, Leas v. Continental Fruit Express, 99 S. W. 859. A constantly developing social and commercial life force an expansion of old rules to embrace its new phases, but there ought to be a real analogy between the new and the old before an addition is made to a list of exceptions to this ancient and wise rule which inhibits the admission of hearsay statements. The analogy between the cases cited above and the instant case does not seem to us to be clear enough to justify an expansion of the exceptions to include the evidence in question. Especially since this evidence related to a recent fact about which witnesses were easily available to testify personally.

It does not, however, follow that there was harmful error in its admission for the following reason: Appellant himself introduced the check above described to establish by its contents the date Boyd saw him in Mathis. This check contains two dates, namely, May 20, 1926, followed by the name of the indorsing bank not fully shown and May 19, 1926, followed by the indorsement of the Mathis State Bank, Texas. The witness Boyd testified this check was given after banking hours on May 20, 1926. The two last dates were bank indorsements purporting to show the date such check passed through such banks, and such indorsements considered with Boyd's testimony proved that the check in question was in the custody of some bank prior to the 20th of May, 1926. This was the only effect which could have been given to the facts stated in the objectionable register.

The appellant himself having proven the very fact to which he objected is in no position to complain of such testimony as has been uniformly held in many cases by this Court. In other words, the appellant having already proven by the introduction of the above described check the same fact which the State proved by the testimony of witness, Price, with reference to the register, cannot here complain of proof of a fact already established by himself. For collated authorities, see Vernon's C. C. P. (1925), Art. 847, Note 32, Vol. 3, P. 271.

A number of bills of exception appear in the record to the refusal of the trial court to permit appellant personally to cross-examine witness at a hearing held on appellant's motion for new trial. It is claimed this action of the Court was violative of appellant's constitutional right of being "heard by himself or by counsel or by both," as expressed in Sec. 10, Art. 1, of our State Constitution. These bills are qualified to show that appellant was at that time represented by counsel and that he was instructed by the Court to have his counsel propound such questions as he desired, whereupon appellant refused to permit his counsel to cross-examine, and no cross-examination occurred of these witnesses on such hearing.

A district court has the undoubted right to hold all trials to their proper and legitimate channels. It is not only his legal right but his duty as well to see that the Court's business proceeds in an orderly and decorous manner. The conclusion logically follows from this premise that a defendant, under the guise of a constitutional right cannot propound impertinent or improper questions to a witness. These bills contain neither questions sought to be asked nor the answers expected. The appellate court presumes nothing against the correctness or fairness of the acts of the court below, or its officers, and objectors thereto must not only affirm but must show that such acts were not legal, and that they were such as to apparently work injury to them. Rodgers v. State, 93 Tex. Crim. Rep. 1. The right to be heard means only a privilege granted and to be exercised within the law in a proper and legitimate manner. In its last analysis appellant's proposition amounts to a bill showing that all of appellant's offered evidence on cross-examination upon hearing of his motion for new trial was excluded. But it is and has always been the rule in Texas that a bill to the exclusion of evidence must disclose the relevancy and materiality of the proposed evidence. Inferences will not be indulged to supply the omission of such essentials. Branch's P. C., Sec. 212. See also Shelton v.

State, 54 Tex. Crim. Rep. 590. We will not presume in support of the bills presenting this matter that an untrained and inexperienced questioner intended to ask relevant and proper questions upon material issues then before the Court. Appellant's position could well be applied to every case where the Court has refused to permit questions in the presence of the jury concerning alleged improper matters. Such a proceeding might be plausibly argued as a denial of the right to be heard, but the books are full of Texas authorities holding that such a complaint presents nothing for review, where neither the question asked nor answers expected are shown in the bill.

We dispose of this question without deciding that under the recited facts any constitutional right of the character mentioned existed, and mention this because such a conclusion might be implied from what has been said.

By bill of exception No. 1 it appears that prior to announcement of ready for trial motion was made to permit appellant's counsel to inspect two written statements or confessions made by the Mexican, Martinez, shortly after his arrest, to the District Attorney of Live Oak County, which permission the Court refused. No part of such statements appears to have been made an issue on the trial, and none of their contents were used against appellant. Nor does it appear that any limitation was placed by the Court on the examination of any witness with reference thereto. Under these circumstances no error appears. Pierce v. State, 5 S. W. (2nd) 516, and authorities there cited. The statements called for were not public documents but private papers. Goode v. State, 57 Tex. Crim. Rep. 220; Taylor v. State, 87 Tex. Crim. Rep. 338. Moreover, appellant's motion was premature. Under the facts of this record such a motion could not be sustained unless and until the statements were in some way made material by the developments of the trial.

The serious question in this case is presented by the bill of exception showing that all opportunity to interview the witness Martinez had been denied appellant and his counsel. Motion was made for such opportunity of interview before announcement of ready for trial. It was shown that the witness was in jail in the town where the trial was being had and the Sheriff declined to permit the appellant or his attorneys to talk to said witness unless required to do so by the Court; that a similar motion had been denied in Live Oak County and appellant and his attorneys had been denied all chance

and opportunity of talking to said witness and had never talked to him. The motion was overruled. It seems to have been appellant's theory that Martinez was coerced into making a confession implicating appellant, and that said witness was entirely dominated by and under the influence of certain officers, fearing to testify other than he did, and that if given a fair chance, such facts might have been revealed as would enable appellant to prove this. It further appears by other bills that the Court over objection permitted some of these officers to remain in the court room while Martinez was testifying and refused to place him under the rule. It appears further from the bill that Martinez had testified on a former trial of this same case and had been cross-examined by appellant's counsel. This to show in opposition to the motion presented that appellant was fully aware of what Martinez would testify when his said motion was presented.

The question is presented by this bill as to whether the State can legally deny opportunity of interview to the accused or his counsel with a State's witness, or put in another way, whether the State can by the affirmative acts of its officers prevent all contact between a prospective witness for the State and accused or his counsel. This does not involve the question of the right of an accused to obtain an order from the Court to compel a witness to talk or submit to an interview who objects to same. That the Court has no authority to enter such an order is well settled. Lee v. State, 100 Tex. Crim. Rep. 664; Wilkerson v. State, 57 S. W. 956; Brewer v. State, 95 Tex. Crim. Rep. 521.

By the terms of our State Constitution the accused is guaranteed the right of compulsory process for his witnesses. He is entitled to know the names of the witnesses upon whose testimony the indictment was found. Art. 392, C. C. P. When a witness has been served with process by one party, it shall inure to the benefit of the opposite party in case he should need said witness. Art. 463, C. C. P. Copy of an indictment must be served on defendant in certain cases and delivered upon request in all cases. Arts. 488 and 489, C. C. P. No arraignment shall take place until the expiration of at least two entire days after the day a copy of indictment was served on defendant, etc. Art. 493, C. C. P. The Clerk is required under penalty to issue subpoenas when and only when written application is made under oath setting out the names of the witnesses, their residence, etc. Art. 103, P. C., and Art. 463, C. C. P. These various provisions evidence clearly an intention to have a prose-

cution conducted fairly and in the open, with every opportunity given the accused to prepare for his trial. The law does not give to the State a proprietary interest in a witness which entitles it to his exclusive possession, for by the terms of Art. 463, C. C. P., a witness under process is a witness for either or both sides. If an accused is to be denied all opportunity to talk to a witness, then the above compulsory process clause of the constitution becomes in most part an empty and high sounding phrase. If the State can incarcerate a witness and prevent any chance of interview and opportunity to know in advance what such a one's testimony will be, it is in effect a nullification of the salutary provisions of the clause of the constitution already referred to, as practically all of its benefits are thus destroyed. Such opportunity of interview would seem to be a necessary implication arising from the compulsory process clause above quoted. The right of reputable counsel to interview a witness has apparently been so rarely denied in American jurisprudence that we find very few cases on the subject. Addressing himself to this question, Presiding Judge Dubois of the Rhode Island Supreme Court uses the following vigorous language:

"The attorney for the defendant not only had the right, but it was his plain duty towards his client, to fully investigate the case and to interview and examine as many as possible of the eyewitnesses to the assault in question, together with any other persons who might be able to assist him in ascertaining the truth concerning the event in controversy. Witnesses are not parties and should not be partisans; they do not belong to either side of the controversy; they may be summoned by one or the other or both, but are not retained by either. It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence applicable to the case to use or not as might be deemed most advantageous. * * * The defendant, therefore, has the constitutional right to have compulsory process for obtaining witnesses to testify in his behalf, he has also the right either personally or by attorney to ascertain what their testimony will be." State v. Papa, 32 R. I. 459.

As illustrating the general attitude of the Courts of other States toward the right of consultation with witnesses, we quote from decisions as follows:

"It is fatal error to refuse the defendant the privilege of conferring with his own witnesses whether they were under the rule or not. This has been so held where his counsel were refused this

right. White v. State, 52 Miss. 216. And very much more is this so in reference to the defendant himself. The denial was an invasion of his constitutional right. It is often of vital importance that both defendant and his counsel should together confer with his witnesses in the progress of the trial. The right cannot be restricted except that the trial court may impose reasonable limitations as to the length of the time of the conferences." Shaw v. State, 79 Miss. 21.

"Where a material witness, and particularly as in this case, an accomplice, is incarcerated in jail and to that extent under the control of the prosecution, and the defendant makes application for leave to interview or question such witness in reference to his testimony, under all the facts shown here, the Court should afford a reasonable opportunity for such purpose, and the denial of the request of the defendant was error." Exleton v. State, 235 Pac. 630.

"Whatever the popular notion may be, it is neither the duty nor the right of the state, acting through its public officers, to secure the conviction of one of its citizens by any available means, fair or foul. The Constitution guarantees to everyone accused of crime a fair and impartial trial (Art. 111, Sec. 16), and the state has no more right to deny defendant's counsel access to a witness material to the defense than it would have had to secrete the witness to prevent the defendant using him, or to deny the defendant the right to process to compel the attendance of a witness, and defendant could not be required to call Felt to the witness-stand without knowing in advance what his testimony would be." State v. Ganger, 73 Mont. 194.

The following language occurs in the case of Brown v. State, 3 Tex. Crim. App. 313:

"It is the duty of attorneys to prepare and acquaint themselves with their cases by talking to the witnesses before the announcement for trial; and, if attorneys are appointed by the court to defend, it is the duty of the court to furnish them full opportunity and facility to converse with the witnesses, and make their necessary preparation before they are forced into trial; and this is especially the duty of the court in cases involving the grave issues of the life or liberty of the citizen."

The right of an accused to have a fair opportunity to prove his innocence is but the expression of a fundamental truth that has been given life and vitality by many provisions of modern law, but which in reality is as ancient as the human desire for justice and fair dealing between men. It follows that we are of the opinion that

appellant or his counsel were entitled to the opportunity of interviewing the Mexican, Martinez, under such reasonable restrictions and safeguards as the circumstances of the case made advisable. If the Mexican had refused to talk that fact was provable in behalf of defendant. Of course the Court had no power to make him talk, particularly in this case, as he himself was under indictment, and could stand on his constitutional rights, but this is not the question presented.

Believing that there was error committed, the only question that can remain for consideration is whether or not same was of that prejudicial character that demands a reversal.

We find in this record that no motion for postponement or continuance was made on account of any surprise at the testimony of Martinez at any stage of the trial nor was there any showing of injury in the motion for new trial in regard to this matter. If there was anything in Martinez's testimony that could have been rebutted on another trial, some showing of same should have been made in the record, either in motion for continuance or on motion for new trial. Bryant v. State, 35 Tex. Crim. Rep. 398; Knight v. State, 64 Tex. Crim. Rep. 560, and authorities there cited. It is shown that appellant had opportunity of cross-examination of witness Martinez at a former trial and if there was any improper restriction upon such cross-examination, it does not appear in the record. The entire record suggests that the appellant knew in advance everything that the witness, Martinez, would testify to at the trial, and that his testimony was in no particular a surprise to appellant. Nor does it anywhere appear that any additional facts in rebuttal of the Martinez testimony would be available to appellant upon any material matter if this case were reversed and remanded. The circumstances of this case were very unusual. The trial court perhaps had reasons which were to him amply sufficient for his action. The Court is of the opinion that the record as a whole shows an absence of injury to appellant arising from the matter complained of. This being the Court's view, and being of the opinion that no error prejudicial to the accused is shown in the record, the judgment of the trial court is affirmed.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—This case was submitted on motion for rehearing sometime since. We find an original motion, an amended motion and a second amended motion supplementing all motions heretofore filed, presenting in the hundreds of pages thereof practically all the matters brought up in original presentation. In this record are more than seventy bills of exception, consideration of which upon the original hearing led us to discussion only of those deemed to raise debatable questions. They have been re-examined in the light of the authorities and arguments, too extended and numerous to mention much less to discuss. We did not discuss in our former opinion, nor will we here, all the points raised in the various bills which we find in the record.

The two most serious questions presented were those relating to the refusal of the court to allow appellant to personally cross-examine three witnesses, as set out in bills of exception Nos. 55, 56 and 57; and a like refusal of appellant's motion asking that the court require the sheriff of Williamson county to give appellant and his attorneys a chance and opportunity to interview and talk to one Martinez, a witness in the case alleged therein to be under the control and in the custody of said sheriff,—as set out in bill of exceptions No. 2.

To get the exact setting of the ruling of the trial court refusing appellant the right to cross-examine the witnesses referred to, we state that the record shows in this regard that appellant attached to his motion for new trial in the court below, the affidavit of Manuela Guzman in which she affirmed that her testimony on the trial of this case to the effect that she washed bloody clothing at the home of appellant's father and mother where he lived, the day after the disappearance of Dr. Ramsey, the deceased,—was untrue; further that upon the hearing of said motion for new trial said witness appeared in person and repudiated the affidavit mentioned, and re-affirmed her testimony as given upon the trial; that thereafter the State offered and the court heard three witnesses, to-wit: one Hunt, Mrs. Ramsey and Mrs. Koepsel who, according to the bill of exceptions taken to the refusal to allow personal cross-examination in case of each of said witnesses, testified to certain matters which, in substance, were corroborative of and supported the testimony of Manuela Guzman as given upon the main trial and the hearing of this motion.

Appellant contends that the refusal to permit him to cross-examine these three witnesses offered in corroboration of the Guzman woman, was in violation of that portion of our Bill of Rights which gives to a defendant the right to be heard by himself or by counsel, or both.

Sec. 10 of our Bill of Rights sets out a number of things which are guaranteed to one accused of crime, such as a speedy public trial by an impartial jury; a right to demand the nature and cause of the accusation against him; that he shall not be compelled to give evidence against himself; shall have the right to be heard by himself or by counsel, or both; shall be confronted by the witnesses against him; shall have compulsory process for witnesses, etc. No one of these guaranties but has been the subject of judicial interpretation and limitation, and this is necessarily so in the very nature of things. Just when is a trial public, is a question for the courts. Just what is a speedy trial, is also a question for their determination. What is an impartial jury, is also a judicial question. How far may one go in demanding a copy of the accusation against him, and what route must he take to get it, and can it under any circumstances be denied, are also for the courts. The courts and legislature say that statements and acts of the accused become in certain circumstances admissible against him. Judicial interpretation has also been had upon the proposition that when one who has been once confronted by a witness and the privilege of examination accorded, what was then said may be used in evidence against him without further confrontation. Whether certain acts and declarations of the accused offered in evidence against him, amount to compelling a witness to give testimony against himself,—is also for the courts. Without denial of the right of compulsory process for his witnesses, the legislature and courts have placed limitations and laid down rules regarding how and when such process must be applied for, and it has been held that when not asked at the time and in the manner commanded by law, the right to such process will not be granted. These and other matters pertaining to the different parts of said Sec. 10 of the Bill of Rights have all been before the courts many times and judicial interpretation has been placed upon all said questions from one angle or another, and this seems in reason and justice to meet the command of our fundamental law without, in many cases what might seem to be an exact literal compliance with the letter of the law, but which in the broader comprehension grants all that the spirit and purpose of the law require.

Turning to the particular guaranty of said bill here involved which nakedly says: "He shall have the right of being heard by himself or counsel, or both," the question arises,—Does this mean that one accused of crime shall have the right to demand that he be heard in person whenever any question connected with his case is before the courts, or juries, or grand juries, and no matter whether the matter under discussion be one of law or fact, or how many counsel the accused has to represent him? Is the only criterion in the decision of this question to be: What does the accused want to do in this particular matter? We think not. Tooke v. State, 23 Tex. Crim. App. 10, is cited by appellant in his motion. In that case this court held that the particular provision of the Constitution under discussion related only to the right of the accused to be heard in a nisi prius trial, and that it was not meant to give the accused the right to be personally heard before the appellate court when his case was there presented; but this holding, alike with every provision of the statute or Constitution, must be given a construction in line with its reasonable intendment. Within a year previous to this writing, two men convicted of crime have personally appeared before this appellate court and argued the merits of their several appeals. This to show that this court holds that where there is no imperative right, to be granted upon the capricious demand of one convicted or accused, still there may arise cases when it would become proper to permit the personal appearance before the appellate court of the accused. Certainly if one charged with crime had no counsel he could not be denied the right to be heard by himself upon his trial, nor could he be denied the right to give his version of the facts and be heard, to this extent in any case; likewise, if within proper limitations he desired to address the jury on the facts upon his trial, it would not be proper to deny this privilege. The conduct of any trial within those bounds fixed by law, must of necessity be left largely to the discretion of the trial judge. Must he allow both the accused and his counsel to speak at will and ad libitum upon each point debated during the trial? Must both be heard to examine or cross-examine all or any witness as they choose? Notwithstanding the fact that there exists well settled and defined rules governing the examination of witnesses, known to attorneys, and observed by them under the direction of the court and under penalties for contemptuous non-observance, must the court at the arbitrary behest of a prisoner well armed with counsel, at such stages of any trial as pleases the accused, sub-

mit the examination or cross-examination of witnesses to the personal conduct of the accused for no other reason stated save that the Constitution uses the word "both" in Sec. 10 of the Bill of Rights? We think not.

The matter immediately involved here was one before the court and not a jury; it was not the actual trial, a verdict of guilty having been returned, but was a hearing upon the motion for a new trial, which was addressed solely to the court. Appellant had able counsel, two of whom were present at the time; the woman Guzman whose affidavit contradicting her testimony had been secured and appended to the motion, had appeared personally and repudiated the affidavit, and the State, as best we gather from the bills of exception, offered three witnesses to give testimony corroborative of the Guzman woman, when appellant demanded the right to cross-examine them, resting such demand solely on the constitutional provision referred to. No showing was made or attempted that any testimony of said witnesses was of matters concerning which appellant had personal knowledge, or that by his personal examination more or different facts favorable to him would be elicited. Absolutely no reason addressed to the conscience of the trial judge, however scrupulous in protecting the rights of the accused, was advanced. As stated, the demand rested solely upon the proposition that the Constitution gave to the accused the right to be heard by himself, or his counsel, or both. In our opinion the court properly refused the request, advising appellant that through his counsel he could ask any question he desired. The wisdom of such rule is made evident and manifest in this case by reason of the fact that before this court appears arguments and motions bearing evidence of personal preparation by appellant himself which contain statements of facts wholly dehors the record, and which would not be tolerated in counsel. Appellant was heard by counsel, and in those matters appropriate,—by himself,—but the record fails to show that he was deprived of any right or any advantage by the refusal of the court to allow him to cross-examine these witnesses upon the hearing of the motion for new trial.

We held it erroneous for the trial court to refuse appellant's motion to require the persons having charge of witness Martinez to allow appellant and his counsel to talk to said witness with reference to this case, but held such refusal not error grave enough under the facts to justify a reversal. Appellant strenuously insists that we were right in holding this matter erroneous, but that we were

wrong in declining to reverse therefor. To get the exact setting of this complaint, we state that before announcing ready for trial, and on the day set for such trial, appellant moved the court in writing to order or require the persons having custody and charge of witness Martinez to give appellant and his attorneys an opportunity to interview "said witness in regard to this case to the end that this defendant and his attorneys may be prepared to announce whether he is ready for trial, and to the end that they may know how and in regard to what matters to cross said witness when he has testified for the State." In our former opinion we generally discuss the question of the error of a refusal to allow an interview with a witness under the control and in the custody of the State, but it is the purpose of the writer to confine, if possible, his review to the exact contentions now made in the instant case, and to the propositions contained in the motion, viz.: the right of appellant to an interview sought on the day the case was set for trial, with the dual purpose of finding out whether to announce ready for trial, and of being able to know how or upon what matters to cross-examine the witness when he has testified for the State. In other words, we are called on to view this motion under the facts and surroundings and in the light same was presented to the trial judge and to decide whether what he did was within his duty and not any abuse of same. The witness was in jail and had been continuously since return of indictment, as far as this record discloses. The venue of the case had been, on January 8, 1927, changed from Live Oak county to Williamson county. We know judicially that Live Oak county is in south Texas and that Williamson county is approximately two hundred miles distant. Presuming the officers to have done their duty as required by law, this witness had been within the jurisdiction and under the control of the judge of the trial court some three weeks prior to the day set for trial, and when on January 31st, the day set for trial, this motion was made, all matters pertaining thereto were before him. It would be well within his discretion to have overruled an application for continuance or postponement then made, if based on information obtained as the result of an interview then had, for the reason that diligence could not have been thus shown. An interview then granted with the witness followed by an application for postponement or continuance, based on what witness may have then said, would not address itself to the judgment of the court as diligence, when such interview might have been had three weeks before, and process issued to Live Oak county

or any other place as a result. We would have to hold such refusal of the court correct if upon this showing the matter was brought before us for review. This seems to have been in the mind of the lower court, as it appears from the bill of exceptions that when the motion was first presented, he declined to pass on same and refused to do so until he had heard appellant's announcement; and appellant having announced ready under protest, the court overruled said motion. In so far as the part thereof relating to appellant's wish for the interview in order to decide whether he was ready for trial, we have no doubt of the correctness of the action of the court below.

As to the supposed error in overruling that part of the motion seeking to have an opportunity to talk to said witness in order that appellant and his counsel might know "How and in regard to what matters to cross said witness when he has testified for the State," this is a rather remarkable proposition. No authorities appear to be cited and we know of none which would make imperative the grant of an interview whose sole object was that the attorneys "might know how and upon what matters to cross-examine." The character and extent of cross-examination in any event depends entirely on what the witness swears upon the witness stand, and the right to so cross-examine then first arises, and we confess our inability to grasp just the point intended or aimed at by this part of the motion. If appellant and his counsel were ignorant of the testimony of the witness, and desired to talk to him in order that being so informed they might prepare to meet, by explaining or overcoming, such testimony, we entertain no doubt of their right to such interview if sought in due time and manner, but it appears here that appellant and his attorneys had heard this witness give his testimony under oath prior to the making of said motion, and no suggestion is made that they were not reasonably in possession of what his testimony would be. It appears also that at such former time of hearing the testimony of said Martinez, appellant was accorded to its fullest extent his privilege of cross-examination; also that he was again accorded the same on this trial. Our statutes expressly provide for continuance or postponement of a case at any stage of its hearing, when it is made to appear to the satisfaction of the court that some unexpected occurrence has arisen since the trial began, which no reasonable diligence could have anticipated and which would prevent a fair trial. No such application was made. Appellant further had the right and opportunity in connection with his motion for new trial to set up and demonstrate that

by some ruling of the court, or other occurrence during the trial, he has been injured.· Nothing of this sort here appears in relation to the denial of his motion.

We thus are confronted, upon this matter, with the fact that appellant sought and was denied an interview with the witness desired for the reason first above discussed, and for the further reason that he might know how and upon what matter to cross-examine him, a proposition of very doubtful soundness when demanded as a matter of right; and further that when the witness gave his testimony appellant did cross-examine him without limitation, and that he has at no time said or shown that he would have been benefited as the result of said interview. In no way is there any showing in this record that the testimony of Martinez as given on this trial was in anywise different from his testimony as given on the former trial, which was all known to appellant and his counsel. Neither before the trial began, based on the refusal of the interview, and his knowledge of what the witness had formerly sworn, nor at any time during the trial, based on what the witness then swore, nor in the motion for new trial,—was there any effort to show facts which would lead us to believe that such interview with the witness would have been to appellant any advantage either in deciding whether he would announce ready for trial, or in deciding upon what he would cross-examine the witness. It logically follows that upon further consideration of these matters we are still of opinion that no error injurious to appellant appears. We believe the other complaints again reviewed were sufficiently disposed of and discussed in our former opinion. So believing, the motion for rehearing will be overruled.

*Overruled.*

ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

MORROW, Presiding Justice.—This appeal was filed June 9, 1927, was affirmed October 24, 1928, and the motion for rehearing was overruled February 6, 1929. The record of the proceedings, including more than 100 bills of exceptions and exceptions to the court's charge, embraces 408 typewritten pages. The statement of facts contains 379 such pages. In the appellant's briefs are embraced about 330 typewritten pages, and in his motions for rehearing are more than 200 such pages, making a total of more than 1300 pages. The application for leave to file a second motion for

rehearing consisting of 48 typewritten pages, contains some criticisms of the court which are quoted below:

"We feel that there are many meritorious assignments of error in appellant's original main brief, which were not considered by the court, at least they were not discussed in the court's opinion, and we therefore assume that they did not receive much consideration. * * *

"It would appear that the court has been so impressed with the facts of this crime that these facts have been allowed to overshadow any and all contentions to the effect that the defendant has not had a fair and impartial trial, and that by reason of such condition the errors set up by appellant almost, regardless of what they are, have either been absolutely ignored by the court or else have been by roundabout process or reasoning held by the court to be harmless. * * *

"We feel that the law of this case ought to be considered as well as the facts; we believe that appellant is entitled to a trial in accordance with the laws of this State, and we do not believe that this court ought in any measure to allow itself to be swayed by the nature of the crime some one has committed like one might expect of a jury. * * *

"We, therefore, must earnestly ask that the court in the consideration of this motion lay aside the facts of this case and review calmly and deliberately the law points raised."

The views of counsel portrayed by the expressions quoted touching the attitude of the court of last resort in a case involving the life of an individual is a subject of regret. During the many months intervening between the time that the appeal was submitted and the court heard oral argument and the time of its affirmance, the many pages of matter presenting the appeal were examined in the most careful manner by the member of the court who wrote the original opinion, and in the progress of the examination various phases of the record and the legal questions involved were discussed with other members of the court. The conclusions stated in the original opinion were announced as the deliberate judgment of the members of the court after thoughtful and careful consultation among themselves. While fully conscious of the duty imposed upon them by their oaths and quite mindful of the serious consequences involved, they reiterated their conclusions upon the motion for rehearing. The assumption that the failure to write about all of the bills of exceptions implied that they were ignored or casually examined is

both unworthy and unwarranted. It should be apparent that the volume of the record and the number of bills of exceptions rendered impracticable the discussion of all of them in the opinion.

Touching the contention that the procedure followed violated the provision of the state Constitution which provides that the accused on trial may be heard in his own defense, little of value can be added to that which has heretofore been written in the opinions delivered. Some light upon the proper construction of the provision in the Bill of Rights declaring that one accused of crime may be heard in person or by counsel or both, may be gathered from the expressions of the court in Tooke's case, 23 Tex. Crim. App. 11, in which Tooke invoked the constitutional provision mentioned, as conferring the right to be brought from the jail to the appellate court in order that he might be heard in person in presenting the appeal. In denying this privilege the court said:

"At nisi prius trials the right of being heard can not be denied the accused. In Wood v. The Commonwealth, 3 Leigh, Virginia, 805, it was held that 'upon the trial of a question of fact in a criminal case the accused has the right to be heard by counsel before the jury, and the court has no right to prevent him from being heard, however simple, clear, unimpeached and conclusive the evidence in its opinion may be.' And in The People v. Keenan, 13 California, 581, the court says: 'It is unquestionably a constitutional privilege of the accused to be fully heard by counsel. An opportunity must be afforded him for full and complete defense.'

"We are of opinion that a fair and legitimate construction of our constitutional provision limits the right of a defendant to be 'heard by himself' to the nisi prius trial. The language of section 10 shows that the intention was to declare rights pertaining to the trial before a jury or court where the charge was being investigated on the introduction of evidence."

The demand of the appellant in the present case was not during the development of the evidence before the jury but in the hearing by the judge when applying for a new trial. Analogous is the interpretation of the provision of the same section of the Constitution to the effect that when the accused has been once confronted by the witnesses against him, the reproduction of the testimony is legal. See Hobbs v. State, 53 Tex. Crim. Rep. 71, and numerous cases collated in Vernon's Ann. Tex. Const., Vol. 1, p. 85, sec. 10.

The present application challenges the correctness of this court's ruling on practically all of the complaints made of the proceedings

on the trial. As stated above, each of them has been given consideration, and the conclusions of the court are found in the opinions heretofore rendered in this appeal. After reading the application and examining such parts of the record as pertain to the constitutional and other important questions raised, we express the view that the opinions reflect the best judgment of this court touching the merits of the appeal.

The application to file a second motion for rehearing is overruled.

*Overruled.*