## FRED SOLSONA V. THE STATE.

No. 21159. Delivered June 19, 1940.
On Appellant's Rehearing October 16, 1940.
State's Rehearing Denied November 20, 1940.

The opinion states the case.

*R. Osterveen* and *Joe Burkett,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is robbery by assault. The punishment assessed is confinement in the State penitentiary for a term of thirty years.

It appears from the record that on the night of July 2, 1939, the appellant and Salvador de la Cerda got into the automobile of Jesus Perez while parked on Santa Rosa Street in the City of San Antonio. Cerda got under the wheel and drove the car away while appellant and Perez occupied the rear seat. After they had gotten some distance, they struck Perez, threw him out of the car and drove away with it. They were pursued by the officers soon after the offense was committed. Cerda was apprehended that night while they were in the act of taking the wheels off the car and the appellant was arrested sometime later.

Salvador de la Cerda testified that he knew Fred Solsona, the defendant; that he had known him about twelve years; that

he met Solsona about 11:30 or 12:00 o'clock on the night of July 2nd. He further testified as follows: "When we approached this car it was parked on Santa Rosa Street close to Buena Vista Street, * * * I don't know who was in the car when we came up to it. * * * When we started the car Fred said 'Let's go.' Fred started the car and I drove it. * * * At that time I did not have any weapon with me, nor did Fred have anything that I saw. Fred got in on the right-hand side and told me to drive off and I did so; and then the fellow in the back began tangling with Fred. I mean they were fighting, and Fred told me to keep on driving. Fred was cursing him and this other fellow was telling Fred to let him go, and then we drove up to somewhere and Jesus jumped off. * * * When he jumped off we took the car away from him. * * * When this fellow jumped out of the car we drove to the creek. * * * Fred told me to help him strip the car. * * * While we were stripping the car the officers came up, and when they did so we ran. I ran towards the creek and had gone about fifty feet when I heard shooting and I surrendered. * * * I do not know where Fred was at that time, and did not see him until on the second day after this happened. This man, Fred Solsona, was the man I was with when this occurred."

Jesus Perez, the owner of the car, testified that he knew the defendant and saw him on the 2nd day of July, 1939. It was about 1:30 A. M., when appellant stood beside Perez's car on Santa Rosa Street. From the testimony of Perez we quote: "He came up to me with a knife. * * * This defendant was on the left side of the car, and the other fellow was on the right-hand side. * * * He told me to get out of the car, and I was going to get back in the car when they hit me in the back of the neck. I got in between the two seats and one of them jumped in and put a knife in my stomach and told me not to move. * * * At that time I was in the car, and they kept on beating me in the back and in the face. * * * Just one was beating me in the back of the car. The first cut I received was on the wrist, and I was also cut on the right side. * * * When we stopped I was scuffling with one of them. These two men took a quarter from me, and I also lost my car. * * * I do not know what they did with it but they found it with the tires off * * *. They left me unconscious on some street, but I don't know the name of it. * * * I went to a house after I regained consciousness and telephoned for the law to come and pick me up. * * * They brought me to the hospital and I stayed there from Sunday until Monday afternoon. * * * I did not give these two

men, or either of them, nor anyone else permission to take this property."

Officers testified to having received information of the alleged robbery. They drove down to the creek and saw two men stripping a car. When they threw the lights on them the men ran. The officers recognized appellant as one of the men who ran from the car. They pursued them and arrested Salvador de la Cerda, but the appellant got away. Appellant was arrested the next morning while asleep.

Appellant testified in his own behalf. He denied having seen Salvador de la Cerda on the night in question. He denied that he had robbed Jesus Perez of the car. He also denied having anything to do with the robbery.

The mother of the appellant testified that her son, · Fred Solsona, came home about eight o'clock on the night in question and did not leave any more; that her son went to bed in the back yard about eight o'clock; that he did not go to bed with his clothes on.

The above constitutes in substance the entire testimony adduced upon the trial. We think the evidence is sufficient to justify the conclusion of the appellant's guilt.

Appellant contends that his punishment is excessive. We are not prepared to say that it is. The punishment assessed is within the limits prescribed by law for the offense for which appellant was convicted. If the State's testimony is to be believed, it was rather an aggravated case. If the defendant's testimony is to be believed, he should have been acquitted. However, the question of his guilt was submitted to the jury who are the exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given to their testimony.

Appellant brings forward a bystanders' bill of exception in which he complains of the alleged testimony given by Mr. Higdon, a deputy constable, who testified: "When we drove over the little hill and our lights picked up the car that they were stripping down in the creek bed where all car strippers go to strip cars, one ran to the right and one ran to the left and the defendant here, Fred Solsona, is the one that ran to the right; I knew it was him from the way he ran; I knew it was him because I have arrested him numerous times for the same thing; he is nothing but a thief and a high-jacker."

This bill of exception is entirely insufficient because part of

the testimony was admissible, at least that part of it up to the point where the witness says, "I know it was him from the way he ran." The other part of the testimony given by the witness, "I have arrested him numerous times for the same thing, he is nothing but a thief and a high-jacker," would have been subject to an objection, but the rule has been well established in this State that where a person makes a blanket objection to the admission of the testimony, part of which is admissible and part of which is not, the objection should be directed specifically to that part which is not admissible. In support of what we have said here, we refer to the cases hereinafter cited and also quote from Tex. Jur. Vol. 4, p. 305, sec. 212, as follows: "A bill of exception complaining of the admission of evidence must point out the particular evidence objected to. A bill containing a general objection to testimony, a part of which is admissible, is insufficient to manifest error if it does not single out the inadmissible portion of the testimony."

See also Ferguson v. State, 133 Tex. Cr. R. 250; Stanfield v. State, 134 Tex. Cr. R. 197; White v. State, 20 S. W. (2d) 196; Leahy v. State, 13 S. W. (2d) 874.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant insists that the objection set forth in his bystanders' bill was sufficient to single out that part of the testimony of Mr. Higdon to the effect that he had arrested appellant on numerous occasions and that appellant was "nothing but a thief and hijacker." Our re-examination of the bystanders' bill, in the light of the motion for rehearing, leads us to the conclusion that appellant is correct in his contention. According to the bill, the witness Higdon testified as follows: "When we drove over the little hill and our lights picked up the car that they were stripping down in the creek bed where all the car-strippers go to strip cars, one ran to the right and one to the left and the defendant here, Fred Solsona, is the one that ran to the right, I knew it was him from

the way he ran, I knew it was him because I have arrested him numerous times for the same thing, he is nothing but a thief and a hijacker." The bill recites that appellant objected to the testimony on the ground that it was "highly prejudicial to the defendant and invaded the province of the jury, and permitted the witness to testify *as to his opinion that the defendant was a thief and a hijacker,* and was calculated to and did prejudice the jury." (Italics ours.) It is also recited in the bill that the objection was overruled and that the appellant excepted.

The language which we have italicized in the objection appears to refer to the statement by the witness that he was of the opinion appellant was nothing but a thief and a hijacker. In our opinion, such language was sufficient to apprise the trial judge that it was appellant's position the witness should not be permitted to testify to the effect that appellant was a thief and a hijacker. That such statement was calculated to prejudice appellant is obvious. It was tantamount to saying that appellant was a criminal generally. It is the uniform holding of the court that an accused is to be tried upon the merits of the charge against him, and that proof of other crimes is not to be received unless such proof comes within one of the recognized exceptions. Enix v. State, 299 S. W. 430; Verner v. State, 35 S. W. (2d) 428; Minor v. State, 5 S. W. (2d) 775. The statement in question was not admissible under any of the exceptions permitting proof of extraneous crimes. The penalty assessed against appellant was far in excess of the minimum. We are therefore constrained to hold that the bystanders' bill reflects reversible error.

The bill appears to be properly in the record and is not contested by controverting affidavits filed in the court below, as authorized by Subdivision 9, Article 2237, R. C. S. (1925) which provides as follows: "Should the party be dissatisfied with said bill filed by the judge, he may, upon procuring the signatures of three respectable bystanders, citizens of this State, attesting to the correctness of the bill as presented by him, have the same filed as part of the record of the cause; and the truth of the matter in reference thereto may be controverted and maintained by affidavits, not exceeding five in number on each side, to be filed with the papers of the cause, within ten days after the filing of said bill and to be considered as part of the record relating thereto."

The decisions of this court are to the effect that the appellate court is "bound by a bystanders' bill which complies with

the statute and is not contested by controverting affidavits filed in the court below, as authorized by the statute." 4 Texas Jurisprudence, page 288; Tadlock v. State, 139 S. W. (2d) 796. It follows that we are bound by the present bill.

The motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of the trial court is now reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The State has filed a motion and presented an oral argument urging that the original opinion entered in this cause affirming the judgment of the trial court should be sustained, and that the order of court granting the rehearing and reversing the case shoud be set aside.

We have again reviewed the questions raised, and believe that the discussion in the original opinion and in the opinion on the motion for rehearing fairly and sufficiently discuss the various questions raised, and properly dispose of them.

The State's motion for rehearing is overruled.