## Wilcher v. Commonwealth.

March 14, 1944.

37

I. C. James for appellant.

Hubert Meredith, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Charles Wilcher was convicted of the crime of rape and sentenced to death. He seeks a reversal of the judgment on three grounds: (1) His constitutional rights were denied him when the trial judge gave additional instructions to the jury and received the verdict in the absence of his counsel; (2) the additional instructions given in the absence of his counsel and after the jury had retired to consider their verdict were prejudicial to his substantial rights; and (3) the court erred in overruling his motion for a continuance because of the absence of three material witnesses.

The evidence for the Commonwealth shows that the crime was committed about 10 p. m., November 16, 1942. Edith Davis, a resident of Nicholasville, Kentucky, went to Burgin, Kentucky, in an automobile driven by Bert Patrick, and they left Burgin about 9:30 p. m. on their return trip to Nicholasville. About two miles from Burgin they ran out of gasoline. Within a few minutes a car approached from the opposite direction and stopped. The driver got out and asked if he could assist them, and Patrick requested him to drive to Brown's Garage in Burgin and get some gasoline. He left, but returned in less than five minutes, stated that he was unable to get the gasoline, and offered to push Patrick's car to Shakertown. He pushed the car less than a mile, stopped, and said the motor in his car was hot. He pointed a pistol at Patrick when the latter got out of his car, and ordered him to walk down the road. He then forced Miss Davis to get in his car, and drove toward Shakertown until he reached the intersection of the Burgin-Shakertown and the Dix River Dam roads. He turned off on the Dix River Dam road, drove some distance, stopped on the side of the road, and, according to Miss Davis, forced her to get out of the car, and ravished her. Patrick ran to a farmer's home in the vicinity and telephoned to the sheriff of

Mercer county, who arrived at the scene in about twenty minutes. The sheriff, with Patrick in his car, started toward Lexington with the intention of overtaking the car in which the stranger had left with Miss Davis. After passing through Shakertown and over the bridge across the Kentucky river, a car was observed approaching from the rear which Patrick recognized as the car of the abductor. It passed at a high rate of speed, and the sheriff was unable to overtake it. He returned to the point on the Burgin-Shakertown road where Patrick had left his car, and there they found Miss Davis and the driver of a truck who had overtaken her while she was walking along the road. On the following night a Lexington policeman shot Charles Wilcher in the leg and seriously wounded him as he was attempting to escape from a house which several members of the police force had surrounded. On November 18, 1942, Patrick and Miss Davis visited him in the hospital at Lexington, and both identified him as the man who had raped Miss Davis on November 16, 1942. At the trial the sheriff of Mercer county also identified Wilcher as the driver of the car which passed him on the Shakertown-Lexington road shortly after the crime was committed.

Wilcher's defense was an alibi. He claimed that he escaped from jail in Lexington some time in October, 1942, and went to Louisville where he remained until the night of November 16, 1942, when he returned to Lexington by bus, arriving there about 11:45 p. m. While in Louisville he stayed at the home of his cousin, Rosie Armes. Wilcher was indicted at the February term, 1943, of the Mercer circuit court, and on May 3, 1943, the first day of the May term, his case was set for trial on May 13, 1943. On May 3, 1943, three of his witnesses, Rosie Armes, Anna Rose Armes, and Irene Windham, all residents of Louisville, Kentucky, were in the courtroom at Harrodsburg, and appellant had subpoenas issued for them for May 13. The sheriff's return was as follows: "Executed on the within Irene Windham, Anna Rose Armes, Rosie Armes, This May 3rd, 1943." When the case was called for trial on May 13, the defendant answered not ready and moved for a continuance. In support of his motion he filed his affidavit in which he stated that Rosie Armes, Anna Rose Armes, and Irene Windham were material and important witnesses who had been summoned on May

3, 1943; that for some reason unknown to him they were not present; that if present they "would state under oath that he, Charles Wilcher was at their home in Louisville, Kentucky on the night that the crime was alleged to have been committed, and that Irene Windham went with him to the Greyhound Bus Station, Louisville, Kentucky, and saw him buy a ticket to Lexington, Kentucky, and board the Greyhound bus about the hour of 9:00 P. M. And on the following night, she learned that the said Charles Wilcher had been shot by a policeman in Lexington, Kentucky. All of which would be true. The affiant says that the witnesses mentioned above are necessary on this trial and that he is unable to go into trial without their presence." The court overruled the motion. This appears in the bill of exceptions: "The defendant's motion for continuance because of the absence of witnesses made at 1:30 P. M. on this date is now overruled; it appearing that the witnesses are residents of Louisville, Kentucky and that an opportunity to secure their presence will be had before the conclusion of the trial; to which ruling the defendant objects and excepts." The case was submitted to the jury some time on May 14, 1943, the second day of the trial. After deliberating about two hours the jury returned to the courtroom and reported they were unable to agree on a verdict. The trial judge said to them: "Gentlemen of the Jury; I am not going to say anything to you at this time, except that this is a matter where the responsibility is yours; be reasonable and above all guard against being stubborn in your views and getting set like concrete." The jury then retired and in about twenty minutes returned a verdict finding the defendant guilty and fixing his punishment at death.

It seems to be conceded that the attorney employed by the defendant was not present either at the time the jury reported they could not agree or at the time the verdict was returned. In his affidavit filed in support of his motion and grounds for a new trial appellant stated that "on the trial of this action his attorney left the courtroom and the town of Harrodsburg, Kentucky, immediately after the case was submitted to the jury." His motion for a new trial was filed on May 15, 1943. It seems that the trial judge, when he learned that the defendant had been deserted by his attorney, appointed two prominent members of the Mercer Coun-

ty Bar to prepare the motion and grounds for a new trial. The record is silent on the matter, and we learn this from briefs. Whether the attorneys were appointed to represent the defendant before or after the verdict was returned does not appear. One of the attorneys appointed by the Court represents appellant on this appeal.

This court has consistently ruled that the provision of our Bill of Rights to the effect that in all criminal prosecutions the accused has the right to be heard by himself and counsel means that the accused has the right to have his counsel present at each stage of the trial. Kentucky Constitution, sec. 11; Temple v. Commonwealth, 14 Bush 769, 29 Am. Rep. 442; Puckett v. Commonwealth, 200 Ky. 509, 255 S. W. 125, 34 A. L. R. 96; Lett v. Commonwealth, 284 Ky. 267, 144 S. W. (2d) 505. In Boreing v. Beard, 226 Ky. 47, 10 S. W. (2d) 447, 451, the court said:

"The most substantial right of the accused in a felony case, incident to his constitutional privilege of being present when the verdict is returned, is the right to poll the jury and to require each member of the jury when face to face with the accused to state whether or not the verdict is his verdict."

Since, ordinarily, a defendant in a criminal case is inexperienced in court procedure, it is important that his counsel be present to protect his rights especially when the verdict is received.

In view of the uncertain condition of the record as to whether or not appellant was represented by counsel at the time the verdict was received, we deem it unnecessary to determine ground (1) relied upon by appellant, since we have concluded that the judgment must be reversed because of the court's refusal to grant a continuance.

It also becomes unnecessary to consider ground (2) relied on by appellant for reversal of the judgment. The only witness introduced by appellant in support of his own testimony that he was not present when the crime was committed was Chester Woodrum, who testified that he met appellant at the bus station in Lexington, Kentucky, at 11:45 p. m., November 16, 1942. His credibility as a witness was attacked and his testimony was of little value, thus leaving the testimony of

Wilcher as to his whereabouts on the evening of November 16th unsupported except by the affidavit as to what the absent witnesses would testify if present, which was read to the jury. Appellant had exercised due diligence to have his witnesses present. The testimony of the three absent witnesses was extremely important and material to him, and, under the circumstances, we think the trial should have been postponed to a later day in the term to afford the accused an opportunity to procure their attendance or the court should have coerced their attendance in the manner prescribed by KRS 455.100, which provides that:

"When a felony case has been called, and either party is not ready for trial because a witness who has been duly subpoenaed and has failed to appear is not in the county in which the court is sitting, the circuit judge may appoint a special bailiff, who shall have power to arrest and bring the witness immediately before the court."

Section 151 of the Criminal Code of Practice makes the provisions of the Civil Code applicable to the summoning and coercing the attendance of witnesses except the attendance of witnesses residing in any part of the state may be coerced. When the trial judge overruled the motion for a continuance and stated that there was ample time to obtain the presence of the absent witnesses, the defendant had a right to assume that he would exercise the power conferred upon him by KRS 455.100. The facts in the present case are similar to those in Lay v. Commonwealth, 186 Ky. 163, 216 S. W. 123, 126, where a witness for the defendant had been subpoenaed and was present when the trial was commenced, but was absent and unavailable when called. The accused filed an affidavit setting forth what the testimony of the witness would be if present and stating that his personal presence was necessary in order that the proper force and effect of his testimony could be had. A motion to discharge the jury and continue the case was overruled, but the affidavit made by the accused as to what the testimony of the absent witness would be was read to the jury as his deposition. In reversing the judgment the court said:

"* * * under all the facts and circumstances appearing in this record, we are of the opinion that it was prejudicial error not to discharge the jury when the

motion for that purpose, supported by the affidavits, was made, or to have postponed the trial until it could be certainly ascertained that Moses could not be produced, and when this appeared to discharge the jury.

"It will be at once seen that the evidence of Moses was extremely important and material to Lay, as it supported in every substantial particular his version of the circumstances attending the homicide. * * *

"It is true the affidavit of Lay was read as the evidence of Moses, but every lawyer at all familiar with jury practice knows that the evidence of a witness given to the jury in the form of an affidavit made by the defendant is not nearly so effective as the testimony of the witness in person would be."

Under the facts and circumstances disclosed by the record, the court either should have postponed the trial to a later day in the term or should have coerced the attendance of the absent witnesses upon its own motion.

Judge Thomas is of the opinion that the judgment should be reversed, but upon grounds (1) and (2) relied upon by the appellant.

The judgment is reversed.

Whole Court sitting.