Donald Ray **ROBERSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48644.

Court of Criminal Appeals of Texas.

July 17, 1974.

Rehearing Denied Sept. 24, 1974.

Joe B. Goodwin, Beaumont (court-appointed), for appellant.

Tom Hanna, Dist. Atty., John R. De-Witt, Asst. Dist. Atty., Beaumont, and Jim Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is robbery by assault; the punishment, twenty years.

The evidence reflects that Mary Whitaker, the manager of the M & M Package Store in Beaumont, was robbed by two Negro males wearing stockings over their heads on August 7, 1972. During the course of the robbery, a customer, Mr. Stanford, entered the store, and after the robbers demanded his money, slumped to the floor and died of an apparent heart attack. The testimony reflects a second customer, Mr. Laudig,[1] entered the store, and his billfold was taken after he was ordered to lie on the floor.

The robbers fled in a blue and white Chevrolet. Appellant was arrested in Orange as he walked along the street. At the time of his arrest, appellant had a pistol and a tear gas gun in his pockets.

The evidence reflects that five persons had been driving around in a blue and white Chevrolet for some time before the robbery. It is uncontroverted that these five persons were the appellant, Robert Adams, Alonzo Brown, Nylie Victoria, and Dora Lartigue. The appellant and Adams were charged in one indictment for this robbery, and Brown, Victoria and Lartigue were charged in another indictment for this same robbery.

Appellant's grounds of error one, two, three and four arise out of his claim that the State suppressed evidence favorable to him. This contention arises out of the following circumstances. Appellant and Robert Adams were both indicted for the instant robbery. When their cases were called, Adams' lawyer moved for a severance, stating that he anticipated that Adams would plead guilty. This appellant's counsel moved that such plea be taken then, so that he might call Adams, who could, after having plead, testify for him

without jeopardizing his plea bargaining position. At this juncture, appellant's co-defendant Adams' counsel again stated that he anticipated that his defendant Adams would plead guilty. Outside the presence of the jury, appellant's counsel called Adams to the stand and attempted to question him about a conversation which he (appellant's counsel) had with Adams before the start of the trial. Adams was asked if, in fact, he had stated that he intended to plead guilty and to testify that appellant was not the one who robbed Mrs. Whitaker in the liquor store with him. Upon advice of counsel, Adams declined to answer that question on the ground that it might tend to incriminate him.

In addition, appellant's counsel testified that, during his conversation with Adams, Adams had told him that it was not the appellant, but one Alonzo Brown, who had been his companion in the robbery. This is the only testimony in this record to support appellant's claim that the trial court erred in refusing to accept Adams' plea of guilty prior to his calling his case for trial. During the trial appellant called Adams, and Adams claimed the Fifth Amendment and refused to testify as to whether it was this appellant or Alonzo Brown who was with him during the robbery.

In order to determine if the failure of the court to accept Adams' guilty plea so that his testimony would be available constitutes a denial of due process, a fuller understanding of the facts is necessary.

The controlling issue is whether or not the testimony of co-defendant Adams would have aided appellant's defense. Appellant did not testify. Therefore, an examination of the State's case against appellant is necessary in order to determine the importance of Adams' testimony.

The injured party, Mrs. Whitaker, testified that, even though the robbers wore stockings over their heads, their features were not so distorted that she was unable to identify appellant.

---

1. This witness was unable to identify either robber.

Dora Lartigue testified that she and the appellant and Alonzo Brown had met at a local cafe in Beaumont and began driving around in Alonzo Brown's blue and white Chevrolet. She testified that after several stops at various houses, as if looking for someone, the appellant left the car at one stop, went into a house, came out with Robert Adams and Nylie Victoria. The next stop was at Robert Adams' house, where Adams went inside and emerged with several shirts.

Shortly thereafter a stop was made at the M & M Package Store, where Victoria went inside and purchased a soft drink. Dora testified that after Victoria returned to the car they drove into an alley alongside the liquor store, where Adams and the appellant got out of the car, changed shirts and went inside. In a short time both came out and got back in the car, where the appellant changed shirts again. They then drove to the home of Arnett McMahon.

Miss McMahon testified that the five people in question arrived at her home and came in, uninvited, and expressed a desire to stay until dark. She testified that the appellant came in and stated that he wanted to use her bathroom so that he could change clothes. After he allegedly changed clothes, appellant and the three other men went into one of the bedrooms. Miss McMahon testified that she was frightened by the activity and looked into the bedroom. There she saw pistols on the beds and money scattered all over the beds and floor. She testified that before they left she heard Robert Adams state, "I hope the woman (Mrs. Whitaker) didn't see my face. She is going to call the cops." Before the five left, Victoria gave Miss McMahon a diamond ring. She later turned this ring over to the police. Mrs. Whitaker identified the ring during trial, testifying that it belonged to her and had been taken from her during the robbery.

Detective Tatum of the Beaumont Police Department testified that a palm print found on the counter in the liquor store matched appellant's hand print. Earlier testimony revealed that one of the robbers had placed his hand on the counter as he leaped over the counter during the robbery.

Alonzo Brown, called by appellant, testified to substantially the same facts as Dora Lartigue had testified to, except that on cross examination he refused to answer when asked who got out of the car with appellant, and he stated that he did not know who was with Adams when he went inside the liquor store. Brown also denied that he gave the appellant the pistol and tear gas gun and told him to get rid of them.

Officer Lewis of the Orange Police Department testified that when appellant was arrested he had a pistol and tear gas gun on his person.

Testimony from Mr. Stanford's employer reflects that he purchased a tear gas gun for Stanford which Stanford carried with him when he was making his collections. Testimony from the owner of the company which sold the tear gas gun reflects that the tear gas gun found in appellant's possesion was the same gun sold to the Tinkle Furniture Company, Stanford's employer, for use by Stanford. While there was no direct evidence that the gun was taken from Stanford during the robbery, testimony that Stanford carried the gun during his work, and appellant's possession of the gun when arrested, makes it apparent that the gun was taken during the robbery by one of the participants.

This is not a question of suppressed evidence. Appellant knew about Adams' proposed testimony, but was deprived of the opportunity to use it.

This is not a question of severance, because severance had already been granted.

This is really a question of order of trial, but severance cases more nearly assist in answering the question.

The question here is whether the appellant, having been deprived of the opportu-

nity to use the projected exculpatory testimony of his co-defendant,[2] has been prejudiced, which results in the denial of a constitutionally fair trial. Byrd v. Wainwright, 428 F.2d 1017 (5th Circuit 1970).

In *Byrd*, a Florida state court had declined to grant a severance in order to make available to an accused exculpatory testimony of a co-defendant. The circuit court propounded certain criteria as a guide to trial judges confronted with kindred problems.

The Fifth Circuit Court first asks if the person desiring the testimony intended to have his co-defendant testify. In the case at bar it is clear that the appellant intended to have Adams testify.

The Court of Appeals next asks if this projected testimony of the co-defendant would be exculpatory. The anticipated testimony of Adams as related by appellant's attorney was not necessarily exculpatory of appellant. The effect of Adams' testimony would have been to place Brown in the store with Adams rather than appellant. However, nowhere was it represented to the trial court that Adams would testify that appellant was not one of the other parties remaining in the automobile or was only an accessory or an accomplice, not a principal to this robbery.[3] Other evidence placed Brown in the automobile, and there was no reason to believe that Adams would have testified that appellant was not in some manner participating in the robbery.

■ The Court next asks if the projected testimony is of such weight and believability that it might influence the decision of the jury. The Court says that "credibility is for the jury," but adds, "the judge is not required to sever on patent fabrications." The judge is properly assigned the task of deciding if the codefendant's proposed testimony is patently false and, if he decides that it is, he is not required to change the order of trial so that his testimony might be heard.

In the case at bar, when the court was once again called upon to rule on this question at the conclusion of the State's case, the trial court had before him the evidence of the finger print testimony, the tear gas gun which was registered to the man who died during the robbery and was found on appellant's person, the testimony of McMahon that the appellant was concerned that Mrs. Whitaker (the injured party) would be able to identify him and would call the police, and Mrs. Whitaker's testimony and identification of the ring.

■ The totality of the circumstances leads to the inescapable conclusion that Adams' proposed testimony was a patent fabrication, and the court did not err in failing to accede to appellant's wishes as to the order of trial.

■ By ground of error eleven, appellant claims that the court erred in refusing to let the appellant ask the State's accomplice witness Lartigue if she was a common prostitute. While the court was in error in ruling on the questions as they were propounded, we fail to find reversible error, because elsewhere in the record Lartigue testified that on the day in question she was supposed to have a date with Alonzo, but that they had not yet agreed upon a price for such date. Clearly, Lartigue's admission rendered the court's ruling harmless error.

■ In grounds of error two, five, six, seven, nine, twelve, fifteen and sixteen, the

2. In Feehery v. State, 480 S.W.2d 649, we did not reach the question presented in the case at bar, because in that case we failed to find that the proffered testimony of the co-defendant was exculpatory.

3. The jury was instructed on the law of principals.

appellant cites no authority and makes no argument in support of these grounds of error. He merely lists a number of grounds one after the other without comment or discussion. This is not in compliance with Article 40.09, Sec. 9, Vernon's Ann.C.C.P., and will not be considered. Henriksen v. State, Tex.Cr.App., 500 S.W. 2d 491, Hayes v. State, Tex.Cr.App., 484 S.W.2d 922, Gaines v. State, Tex.Cr.App., 481 S.W.2d 835.

Grounds of error thirteen and fourteen seek to group a number of questions appellant propounded to the witness Lartigue and the refusal of the court to require her to answer. We are referred specifically to only two in which he asked her if she had ever used heroin with Alonzo Brown and others. Such were not proper questions for impeachment. Roliard v. State, Tex.Cr.App., 506 S.W.2d 904.

Ground of error seventeen relates to the court's refusal to permit appellant to make a pro se argument to the jury. Ward v. State, Tex.Cr.App., 427 S.W.2d 876, is decisive of the question presented.

Grounds eighteen and nineteen complain of the refusal of the court to permit appellant's counsel to place a stocking over his and his client's head during argument. There was no showing that the stocking sought to be used was in anywise similar to the one used in the robbery. This was therefore an attempted demonstration involving new evidence which was improper at the argument stage of the trial.

We have reviewed other grounds of error advanced by appellant and find them to be wholly without merit.

Finding no reversible error, the judgment is affirmed.