Thomas Edward LANDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 51979.

Court of Criminal Appeals of Texas.

Jan. 5, 1977.

Opinion On State's Motion For Rehearing April 20, 1977.

Rehearing Denied May 18, 1977.

Melvyn Carson Bruder, on appeal only, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Les Eubanks and R. Gary Noble, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

Appellant was convicted under the former penal code of the offense of passing a forged instrument and his punishment was assessed by a jury at five years. A prior conviction in this cause was reversed by this Court for the admission of a similar instrument bearing appellant's name, operator's license and social security number without any proof as to who wrote said items on said instrument or any evidence connecting appellant therewith. *Landers v. State*, Tex. Cr.App., 519 S.W.2d 115. The evidence showed that two checkbooks were stolen at a burglary on March 19, 1972. Only the check appellant was charged herein with passing was admitted. At a prior trial appellant was acquitted on the charge of passing another check allegedly taken from said checkbook, but in the instant trial said check upon which he was acquitted was excluded upon motion by the State.

Appellant's first ground of error complains of argument by the State that the State tried to offer in evidence additional checks but that appellant's counsel objected to them, and its subsequent argument that the law of extraneous offenses keeps the State from bringing many, many other checks, if there are any. Said ground of error is multifarious, *Dorsey v. State*, Tex. Cr.App., 450 S.W.2d 332, but we do not feel same would present reversible error even if such were not the case. The only ground stated for the obje tion to the first complained of argument was that same was a false statement and the only ground timely urged in the objection to the said second

statement was that such was not a correct statement of law. No ground was ever stated for either of the motions for mistrial relating thereto. Even if said objections were held not within the prohibition of "general objections", *Wilson v. State*, Tex. Cr.App., 541 S.W.2d 174, we hold that said argument was invited by defense counsel's prior argument to the jury, to-wit:

> "Let's go a step further. Don't you know that if they had any evidence, any evidence at all, that Tommy Landers . . . had additional checks, don't you know they would have . . . brought that evidence and laid it right out in front of you, pass it around like they did that check? Lack of evidence. Lack of evidence."

> "It seems very strange to me, very strange, that no other checks were associated with Tommy Landers name, no other checks."

> "Why didn't they bring up all those other checks and show you that Tommy Landers, Tommy Landers' name appeared on them?"

*Hill v. State*, Tex.Cr.App., 518 S.W.2d 810; *Chappell v. State*, Tex.Cr.App., 519 S.W.2d 453; *Pesch v. State*, Tex.Cr.App., 524 S.W.2d 299; *Holloway v. State*, Tex.Cr. App., 525 S.W.2d 165; *Garrison v. State*, Tex.Cr.App., 528 S.W.2d 837.

Appellant's second ground of error contends that the prosecutor's argument that the State was in possession of other similar checks which had been simultaneously stolen with the one charged against the appellant, when appellant had been tried and acquitted on a charge of passing one of the checks supposedly simultaneously stolen as a part of one checkbook, violated the State and Federal Constitutional prohibition against double jeopardy. Appellant's failure to make *said objection* to said argument at the time of the making of same precludes review of said question. *Peach v. State*, Tex.Cr.App., 498 S.W.2d 192; *Pete v. State*, Tex.Cr.App., 501 S.W.2d 683, cert. den. 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574; *Schumake v. State*, Tex.Cr.App., 502 S.W.2d 758; *Lamberson v. State*, Tex.Cr.

App., 504 S.W.2d 894; *Davis v. State*, Tex. Cr.App., 505 S.W.2d 800; *Esquivel v. State*, Tex.Cr.App., 506 S.W.2d 613; *Ex parte Bagley*, Tex.Cr.App., 509 S.W.2d 332; *Elizaldi v. State*, Tex.Cr.App., 519 S.W.2d 881. However, even if same had been properly raised we would be compelled to conclude that such would not present reversible error for the reason that appellant's counsel invited the State's reply as shown above. Even if *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972), holding that collateral estoppel as a part of the law of jeopardy prohibits any reference to proof of a collateral crime of which a defendant has been acquitted is to be followed, such would apply only to primary proof thereof and not proper rebuttal evidence or a reply to invited argument thereon. Appellant's contention that *Ex parte Scelles*, Tex.Cr.App., 511 S.W.2d 300, holding that double jeopardy can be raised for the first time in the habeas corpus proceeding, renders it unnecessary to object at the trial level to preserve the point held to be error in *Wingate v. Wainwright*, supra, is clearly without merit. The Constitution prohibits a prosecution for an offense of which a person has theretofore been placed in jeopardy. The *Wingate* question does not involve a second *prosecution* for the same offense, but merely involves an evidentiary matter in a prosecution for a separate offense.

Ground of error three contends that the denial of appellant's motion to act as co-counsel in his behalf and cross examine any and all witnesses against him, make any statements to the court and argue his case before the jury if he so desired, was a violation of his rights under the Sixth Amendment to the Constitution of the United States and Art. 1, Sec. 10 of the Texas Constitution. It is true as contended by the State that the cases of *Ward v. State*, Tex.Cr.App., 427 S.W.2d 876; *Roberson v. State*, Tex.Cr.App., 513 S.W.2d 572; and *Ballard v. State*, Tex.Cr.App., 514 S.W.2d 267, specifically hold that an accused is not entitled as a matter of absolute right under said constitutional provisions to argue to the jury pro se. Said *Roberson* and *Ballard* cases merely cite as their authority said *Ward v. State*, supra, and *Ward* is not actually supported by any of the decisions cited therein. The recent decision by the Supreme Court of the United States in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, decided in June of 1975, in holding an accused has the absolute right under the Federal Constitution to defend himself without any counsel, made the following statements considered by us to be applicable herein:

"Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

"The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. Cf. *Henry v. Mississippi*, 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408; *Brookhart v. Janis*, 384 U.S. 1, 7–8, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314; *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 829, 9 L.Ed.2d 837. This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents'

the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense."

Appellant certainly did not allocate at the beginning of the trial, expressly or by implication, to his counsel the right to cross examine witnesses. To the contrary, he specifically in writing demanded this right *for himself* as to *any and all witnesses against him*. The trial court's conclusion at the time of his denial of appellant's said demand that the appellant is a "well known jailhouse lawyer" who would be impossible to work with as a co-counsel cannot properly be considered by this Court, for to do so would clearly constitute a denial of due process to appellant. Any contention that the appellant would be better off allocating his right of cross examination to his court appointed attorney is a mere argument that the framers of the Texas Constitution acted unwisely in specifically providing in Art. 1, Sec. 10 that "in all criminal prosecutions the accused . . . shall have the right of being heard by *himself or counsel, or both*." (Emphasis added.) Furthermore, we might say, but we cannot know, that an accused person's chances are better with his attorney cross examining the witnesses against him. By reason of his personal and exclusive knowledge of particular facts being testified to by the witnesses against him, he may be in a better position to cross examine said witnesses than would be his attorney. The accused for reasons personal to himself may not desire to divulge to his attorney all of the intimate details of a particular transaction that might be of value in the cross examination of a witness.

Any conclusion that an accused's exercise of said constitutional right to examine witnesses is disruptive of orderly procedure can only be determined after such occurs. It cannot be presumed in advance for all presumptions should be indulged in favor of the right to exercise constitutional rights.

In our recent decision of *Dugger v. State*, 543 S.W.2d 374 (decided November 10, 1976), we called attention to the fact that the *Faretta* decision is silent as to its retroactive application and it was not necessary to pass on said question since the record in said case did not show that the defendant ever asked that he be permitted to represent himself. This cause was tried in April 1975, approximately two months prior to the decision in *Faretta*. Since all prior decisions of this Court and the United States Supreme Court as to the Constitution's clause pertaining to being heard by himself or counsel have held that the denial of said right renders past convictions, regardless of how remote, void, we cannot help but conclude that on this direct appeal the denial of appellant's timely and properly presented request for his constitutional right to personally cross examine witnesses against him presents reversible error. Any matter relating to the entire scope of cross examination of any and all witnesses relates to the integrity of the fact finding process. *Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

The judgment is reversed and the cause remanded.

ODOM, J., concurs in the results.

DOUGLAS, J., dissents.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The State's motion for rehearing is granted. We affirm.

Article 1, Section 10 of the Texas Constitution provides that an accused in criminal cases "shall have the right of being heard by himself or counsel, or both." The opinion on original submission misconstrues this provision and obliterates the well established distinction between the right to be heard and the right to counsel.

The Constitution should be interpreted in light of conditions existing at the time of its adoption. *Mumme v. Marrs*, 120 Tex.

383, 40 S.W.2d 31 (1931). See also *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149 (1912); and *Jones v. Ross*, 141 Tex. 415, 173 S.W.2d 1022 (1943). Cf. *Snodgrass v. State*, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912). Article 1, Section 10, supra, was first adopted in 1836. At that time other states had similar constitutional provisions. A mandate that an accused should have a right to be heard by himself and by his counsel was adopted by New Hampshire in 1774, Pennsylvania in 1776, Delaware in 1782 and by Connecticut in 1818. In 1790 Massachusetts adopted a provision which gave a defendant the right to be heard by himself or his counsel at his election. In 1798 Georgia provided that an accused might be heard by himself or counsel or both. New Jersey in 1776 guaranteed defendants the same privileges of witnesses and counsel as their prosecutors "are or shall be entitled to." These colonial and early state constitutional provisions were adopted in the context of the English common law.

Originally in England the accused was not permitted to be heard by counsel upon indictment for treason or felony.[1] In practice the English courts did allow counsel to advise the defendant on matters pertaining to the conduct of his case and on questions of law arising upon the trial, and to represent him in collateral matters. Often counsel was permitted to do everything for the accused except address the jury for him.[2]

The rule prohibiting counsel for one accused of treason obtained until 1695 when the right to counsel was given by statute.[3] But the rule forbidding the participation of counsel in felony cases stood until 1836. It was also abrogated by statute.[4] Although the rule in misdemeanor cases and, after 1695, in prosecutions for treason was that the defense must be conducted either by the defendant in person or by counsel, both were not permitted to participate in the trial.[5]

The accused had always been allowed to plead his cause orally in person.[6] But, since the accused was not allowed to have counsel, his statements covered whatever he wanted to say regarding law, evidence, or argument. In effect, then, the accused "furnished evidence, i. e. material which affected the jury's belief; but he was not sworn, he had no standing as a witness, and in theory of the law he therefore gave no evidence."[7]

During the period of recorded trials down to the latter part of the sixteenth century, the accused addressed the jury at the proper stage and was questioned freely, as if his statements could influence the outcome.[8] However, the principle of disqualification for interest, which emerged first in civil cases, gradually extended to criminal cases, rendering the accused incompetent to be a witness in his own cause.[9] By the time of James II, just before the Revolution, the courts were expressly repudiating the notion that the defendant's statements were to be taken as testimony.[10] He could still speak on his own behalf, if desired, but not under oath.[11] The competency of the ac-

1. 1 Chitty, Criminal Law, 406 (5th Am.Ed.)

2. 1 Chitty, supra.

3. 7 Will. 3, c. 3, section 1.

4. 6 & 7 Will. 4, c. 114, sections I and II.

5. See *Betts v. Brady*, infra, and the discussion contained therein.

6. Levy, Origins of the Fifth Amendment, 324 (1st ed. 1968).

7. II Wigmore, Evidence, Section 575 at 684 (3d ed. 1940).

8. Sir James Stephen, 1 A History of the Criminal Law of England 325, 377, 440 (1883).

9. II Wigmore, supra, Section 575 at 685.

10. See, e. g., 1678, Coleman's Trial, 7 How. St.Tr. 1, 65 (Coleman: "I came home the last day of August"; L.C.J. Scroggs: "Have you any witness to prove that?"; Coleman: "I cannot say I have a witness"; L.C.J.: "Then you say nothing"); 1681, Colledge's Trial, 8 How. St.Tr. 549, 681.

11. Levy, Origins of the Fifth Amendment, supra, at 324.

cused to testify under oath was not established in England until 1898.[12]

It is beyond dispute that England intended her law, the common law included, to be transplanted to her American colonies. It was the common law that the first generation of colonists knew best in criminal matters, especially its procedures. After the Declaration of Independence, every state except Connecticut and Rhode Island provided by constitution or statute that the common law of England as previously practiced was to remain in force (until such time that it might be altered legislatively).[13]

Against this background, it appears that the various constitutional provisions affording the accused the right to be heard were designed to give him the right to testify. This was recognized by Professor Wigmore:

"Under a constitutional clause providing that 'the accused shall have the right to be heard by himself and counsel,' the accused of course has a *right* to testify; this right overriding any other disqualification. . . ." [14]

The harsh common law restrictions upon the right to counsel and the right to be heard were discussed by the United States Supreme Court in *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). The Supreme Court then stated its interpretation of the constitutional provisions:

"In the light of this common law practice it is evident that the constitutional provisions to the effect that a defendant should be 'allowed' counsel or should have a right 'to be heard by himself and his counsel', or that he might be heard by 'either or both,' at his election, were intended to do away with the rules which denied representation, in whole or in part, by counsel in criminal prosecutions, . . ."

■ Thus, Article 1, Section 10, supra, and similar constitutional provisions were intended to afford an accused the right to participate and be heard in his trial while at the same time removing the restrictions to full representation and participation of counsel. However, these provisions were not intended to encompass the right to counsel as that right is delineated in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The prior decisions of this Court clarify the distinction between the right to counsel and the right to be heard. In *Walker v. State*, 32 Tex.Cr.R. 175, 22 S.W. 685 (1893), the trial court limited defense counsel's time for argument. On appeal, this Court held that such limitation under the facts of that case denied the accused the right to be heard. The decision was based upon the right to be heard as provided by Article 1, Section 10, supra, and not upon the right to counsel.

In *Leahy v. State*, 111 Tex.Cr.R. 570, 13 S.W.2d 874 (1928), the trial court refused to permit the defendant to personally cross-examine witnesses at the hearing on motion for new trial. This Court declared that every provision of the Constitution must be given a construction in line with its reasonable intendment. Interpreting Article 1, Section 10, supra, the Court stated that "if one charged with crime had no counsel, he could not be denied the right to be heard by himself upon his trial, nor could he be denied the right to give his version of the facts and be heard to this extent in any case; likewise, if within proper limitations he desired to address the jury on the facts upon his trial, it would not be proper to deny this privilege." But the Court concluded that Section 10 does not permit an accused and his counsel to speak at will upon each point debated during the trial. Nor does it allow both to examine and cross-examine witnesses as they choose. The Court then held that the defendant in that case "was heard by counsel, *and in those matters appropriate, by himself*, but the record fails to show that he was de-

---

12. St.1898, section 1.

13. Levy, Origins of the Fifth Amendment, supra, 336–338.

14. II Wigmore, supra, Section 579 at 701–02, fn. 4.

prived of any right or any advantage by the refusal of the court to allow him to cross-examine these witnesses upon the hearing of the motion for new trial." (Emphasis supplied).

The recent decision of *Webb v. State*, 533 S.W.2d 780 (Tex.Cr.App.1976), is also instructive. In that case, we reaffirmed the rule that an accused does not have the right to be both represented by counsel and also propound his own questions to witnesses and make jury argument in his own behalf. See also *Ward v. State*, 427 S.W.2d 876 (Tex.Cr.App.1968); *Roberson v. State*, 513 S.W.2d 572 (Tex.Cr.App.1974); and *Ballard v. State*, 514 S.W.2d 267 (Tex.Cr.App.1974).

This Court has consistently interpreted Article 1, Section 10, supra, to allow an accused and his counsel to be heard at trial in appropriate situations, but not to expand or alter the right to counsel or in any way give the accused the right to hybrid representation. Moreover, no other state court has construed such a constitutional provision to give an accused the *right* to hybrid representation.

The Georgia Constitution provides that "[n]o person shall be deprived of the right to prosecute or defend his own cause, in any of the courts of this State, in person, by attorney, or both." The courts of that state have interpreted this provision to give the trial court discretion as to whether an accused may conduct any part or all of the cause where he is represented by counsel. See *Heard v. State*, 126 Ga.App. 62, 189 S.E.2d 895 (1972), and authorities cited therein. Thus, there is no right to hybrid representation in Georgia. Such representation is a privilege which may be granted "upon timely request." *Heard v. State*, supra.

Section 11, Declaration of Rights, Florida Constitution, provides, "[i]n all criminal prosecutions, the accused * * * shall be heard by himself, or counsel, or both." In *Thompson v. State*, 194 So.2d 649 (Fla.App. 1967), the defendant contended that this provision secured for him, as a matter of right, the opportunity to address the jury even though he was represented by counsel.

The court rejected that contention and held that the trial court has discretion to limit a defendant's conduct of the case.

The Oregon Constitution provides that "in all criminal prosecutions the accused shall have the right * * * to be heard by himself and counsel." In *State v. Rogoway*, 45 Or. 601, 81 P. 234 (1905), the Supreme Court of Oregon interpreted the provision to mean that an accused has the right to be fully heard in his defense by counsel. In that case the trial court limited argument of counsel to one hour. The Supreme Court reversed and held that the time restriction upon counsel's argument did not permit a full and fair discussion of the case before the jury and thus violated the defendant's constitutional right to be fully heard.

The Constitution of Alabama provides that "in all criminal prosecutions the accused has the right to be heard by himself and counsel, or either." The Alabama Supreme Court has stated this provision requires that counsel receive full and fair opportunity to present his client's defense. *Yeldell v. State*, 100 Ala. 26, 14 So. 570 (1894).

An accused in Kentucky is guaranteed the "right to be heard by himself and counsel." The courts of that state have consistently ruled that the provision means an accused has the right to have his counsel present at each stage of the trial. See *Wilcher v. Commonwealth*, 297 Ky. 36, 178 S.W.2d 949 (App.1944), and the authorities cited therein.

In South Dakota, an accused is accorded the right "to defend in person and by counsel." However, this provision does "not create or guarantee dual rights. * * * An intelligent competent accused must elect either (1) to have an attorney—by employment or by appointment, or (2) to defend himself. He is not entitled as a matter of right to both." *State v. Thomlinson*, 78 S.D. 235, 100 N.W.2d 121 (1960).

In California, a defendant "is not entitled to have his case presented in court *both by himself and by counsel* acting at the same

time or alternating at defendant's pleasure." (Emphasis supplied) *People v. Hill,* 70 Cal.2d 678, 76 Cal.Rptr. 225, 452 P.2d 329 (1969), cert. denied 406 U.S. 971, 92 S.Ct. 2416, 32 L.Ed.2d 671 (1972). The Supreme Court of Nevada reached the same conclusion in *Miller v. State,* 86 Nev. 503, 471 P.2d 213 (1970), even though that state's constitution provides that an accused "shall be allowed to appear and defend in person, and with counsel . . . ." See also 23 C.J.S. Criminal Law § 979(4), and 21 Am.Jur.2d, Criminal Law, Section 311, which sets forth the general rule that an accused has no right to hybrid representation.

The right of self-representation has been granted in federal proceedings by statute since 1789. See, Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the First Congress and now codified in 28 U.S.C. Section 1654. The federal courts have consistently recognized that an accused has a right to represent himself or to be represented by counsel but does not have a constitutional right to hybrid representation. *Lee v. Alabama,* 406 F.2d 466 (5th Cir. 1968), cert. denied, 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969); *Brasier v. Jeary,* 256 F.2d 474 (8th Cir. 1958), cert. denied, 358 U.S. 867, 79 S.Ct. 97, 3 L.Ed.2d 99 (a civil case); *Duke v. United States,* 255 F.2d 721 (9th Cir. 1958), cert. denied, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365 (1958); *United States v. Dellinger,* 472 F.2d 340 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States v. Conder,* 423 F.2d 904 (6th Cir. 1970), cert. denied, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267; *Shelton v. United States,* 205 F.2d 806 (5th Cir. 1953), appeal dismissed, 346 U.S. 892, 74 S.Ct. 230, 98 L.Ed. 395; and *United States v. Wolfish,* 525 F.2d 457 (2nd Cir. 1975). See also Annotation, 17 A.L.R. 266, 271, supplemented at 77 A.L.R.2d 1233, 1241. Significantly, those courts have likewise universally held that *Faretta v. California,* supra, does not alter the established rules of hybrid representation. *United States v. Hill,* 526 F.2d 1019 (10th Cir. 1975), cert. denied 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976); *United States v. Bennett,* 539 F.2d 45 (10th

Cir. 1976); *United States v. Gaines,* 416 F.Supp. 1047 (N.D.Ind.1976). And in *United States v. Swinton,* 400 F.Supp. 805 (S.D. N.Y.1975), the court stated:

". . . *Faretta* ratified a consensus within the federal judiciary favoring a constitutional right to pro se status; that consensus has existed side by side with another finding that a defendant's appearance as co-counsel lies within the discretion of the trial court. The Sixth Amendment does not give any indication that hybrid representation is a right of constitutional dimensions. . . ."

Furthermore, no constitutional provision of another state had been reinterpreted in light of *Faretta* to accord a defendant the right to hybrid representation. The Oklahoma Constitution provides that an accused "shall have the right to be heard by himself and counsel." This provision was construed by the Oklahoma Court of Criminal Appeals in *Lowe v. State,* 58 Okl.Cr. 233, 52 P.2d 115 (1935), to mean that an accused has the right to testify. Cf. *Cannon v. State,* 58 Okl.Cr. 451, 55 P.2d 135 (1936). In the recent decision of *Stiner v. State,* 539 P.2d 750 (Okl.Cr.1975), the same court considered the impact of *Faretta* in that state and concluded that an accused has no right to act as co-counsel.

Although Article I, Section 18(a) of the Missouri Constitution gives an accused the right "to appear and defend, in person and by counsel," such provision has not been construed to mean that a defendant is entitled to hybrid representation. *State v. Velanti,* 331 S.W.2d 542 (Mo.1960); *State v. Ingram,* 316 Mo. 268, 289 S.W. 637 (1926). In *State v. Burgin,* 539 S.W.2d 652 (Mo.App. 1976), the accused contended that in light of *Faretta* the state constitution entitled him to hybrid representation as a matter of right. The court rejected that contention and stated:

"*Faretta v. California,* supra, held only that the Sixth Amendment to the United States Constitution guarantees to a defendant in a state criminal trial the right to defend himself without counsel, and that where a defendant voluntarily and

intelligently waives his right to counsel, the state may not force counsel upon him. It was emphasized that Faretta 'weeks before trial . . . clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel,' and, consequently, the trial court erred in forcing him 'to accept against his will a state-appointed public defender . . . .' "

■ Therefore, *Faretta v. California,* supra, has not altered the meaning of Article 1, Section 10, supra, as interpreted by the many previous decisions of this Court. There is no constitutional right in Texas to hybrid representation partially pro se and partially by counsel.

Chief Justice Burger, then Judge of the United States Court of Appeals for the District of Columbia, discussed the proper roles of the defendant and his counsel at the National Defender Conference in 1969:

"Answering the question 'who controls the progress of a case—the defendant or his counsel?' Judge Burger had an emphatic response: 'The defense lawyer!' The defendant has only three decisions to make, he pointed out. To plead guilty or not guilty; to have a jury or non-jury trial; and to take the stand or not.

"The ideal and goal, according to Judge Burger, is to establish a system in which the assigned defense counsel will be indistinguishable from the retained defense counsel in skill, as well as manners."

5 Criminal Law Reporter 2161, 2162.

The opinion on original submission and the dissent to this opinion would destroy years of precedent by misconstruing Article 1, Section 10, supra, and *Faretta v. California,* supra. If the dissent were adopted, it would distort the proper lawyer-client relationship in criminal cases and would carry the potential for chaos in the courtroom.

If the dissent were the rule, one would have to pity the plight of the defense counsel who would have to put up with an unruly or untrained defendant. In case of a disagreement on a tactical matter, who would control? If the lawyer prevailed in his view of the strategy and a defendant were to be convicted, many claims of ineffective assistance of counsel would be raised. No doubt many civil suits against lawyers would be filed if such a hybrid type of representation were required. For example of the many problems where an accused has acted as co-counsel, see *Williams v. State,* 549 S.W.2d 182 (1977).

When it is not required under the Constitution of the United States or the Constitution of Texas, we will not force trial judges to sit where there is so great a likelihood of trials being farces and mockeries of justice.

If this new proposed doctrine of hybrid representation were allowed in the trial of a case, then the Constitution of Texas would allow such representation in the appellate process because there is no limitation in Article 1, Section 10 as to when an accused may be heard.

The position of the dissent is contrary to the decisions of this State and of all the other jurisdictions which have the same or similar constitutional provisions. We give great weight to those decisions.

The State's motion for rehearing is granted and the judgment is now affirmed.

PHILLIPS, Judge, dissenting.

I remain convinced of the soundness of our opinion on original submission, but desire to call attention to additional factual and legal realities that further contradict the concepts in the majority opinion on rehearing.

The majority quotes and apparently adopts the view of Chief Justice Burger expounded by him at the National Defender Conference in 1969 to the effect that the defendant has no right to make decisions affecting his fate during the progress of his trial other than what plea to enter, whether to have a jury, and whether to take the stand. It was this very view, which was again expressed by Chief Justice Burger in his dissent in *Faretta v. California,* supra, that was overruled by the Supreme Court in the *Faretta* decision.

Article 1, Sec. 10 of the Texas Constitution provides:

"The accused shall have the right of being *heard by himself or counsel or both.*" (Emphasis added)

Under no possible construction of the English language as it has ever existed can one construe the term "heard" in the above Constitutional provision to have different meanings as to the terms himself, or counsel or both. Would the majority interpret this provision as guaranteeing defense counsel the right to testify? It is inconsistent to interpret "heard" to mean "the right to testify" when applied to the accused, while interpreting "heard" as "the right to conduct a defense" when applied to counsel.

Article 1, Sec. 10 is expressly made applicable "in all criminal prosecutions". The term "criminal prosecution" encompasses all proceedings therein from indictment through sentence and the right to be heard applies to each and every one. In-depth analysis of the historical data set out in the majority opinion as well as that set out in *Faretta,* supra, verifies this obvious conclusion instead of detracting therefrom as contended by the majority.

In *Faretta v. California,* supra, 422 U.S. at page 819, 95 S.Ct. at page 2533, the Supreme Court of the United States makes plain to all the true meaning of the Sixth Amendment by the following pronouncements:

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense . . . The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally."

In view of these clear and certain pronouncements, how can one contend that an accused's timely demand of his now certain right to personally make his defense by cross-examining the witnesses against him can be, or even should be, denied merely because he has an attorney sitting by his side as an assistant or a so-called co-counsel? When an accused states at the beginning of a trial that he will exercise his now ironclad right to represent himself, will the majority hold that the trial court, in the face of the Sixth Amendment and Article 1, Sec. 10, has the right to prohibit an attorney from sitting at the counsel table with him as his *assistant?* If not, what happens when an accused is suddenly confronted with a matter beyond his comprehension or training and, consistent with ordinary rules of procedure, his co-counsel (assistant) attempts to handle same? When consistent with ordinary procedural rules for co-counsel, would the majority hold that said co-counsel (assistant) could not participate? What if the accused himself is an attorney? Would the majority make a distinction between when a defendant singularly demands to defend himself, thereafter singularly requesting that his lawyer be permitted to assist him and when a defendant simply demands the right to act as co-counsel with his lawyer and cross-examine the witnesses against him in accordance with the rules of procedure for co-counsel? As stated by the Supreme Court in *Faretta,* "*It is the accused, not counsel, who must be confronted with witnesses against him.*" (Emphasis added.) Thus, not only does the Sixth Amendment right to counsel sustain the defendant's position herein, but the Sixth Amendment's personal right to confront the witnesses likewise supports and requires that the accused be afforded his right to personally cross-examine the witnesses against him. Said right was, of course, subject to the trial judge's discretionary powers pertaining to cross-examination such as the requiring that the cross-examination of one witness be limited to one

counsel, that same be conducted in an orderly manner, be non-repetitious and limited by the rules of evidence. 61 Tex.Jur.2d, *Witnesses,* Sec. 128 (1964) at 696.

The majority opinion quite surprisingly gives as reasons and justification for its shrinking of the individual Constitutional right pronounced in *Faretta* the theories that to accord such individual right might cause a defense counsel to have to put up with an untrained defendant, might cause some claims of ineffective assistance of counsel, might cause a civil suit against a lawyer, might result in a conflict between a lawyer and his client as to trial strategy, might give a defendant a right to be heard on appeal, might increase the likelihood of a trial being a farce, and might carry the potential for chaos in the courtroom. Not one of said fears has any justification in fact. *Actually,* regardless of whether an accused is participating in his own defense or not, a lawyer must *in all cases* bow to the ultimate decision of his client on strategy or withdraw from the case; there would be less grounds for a claim of ineffective counsel and fewer law suits against lawyers would be filed; there would be less likelihood of a trial becoming a mockery of justice where an accused representing himself has the benefit of the advice of co-counsel; and disruptive conflicts between the trial judge and the accused who has elected to conduct his own defense would occur far less frequently if the accused had the settling and persuasive influence of trained co-counsel by his side. Of course, the realities are that any defendant who is bent on a course of disruption of courtroom procedure would do so regardless of the presence or absence of counsel. When such is not an avowed purpose of the defendant, the presence of a co-counsel, friendly to his own interests, would necessarily contribute favorably to orderly procedure.

The State's Motion for Rehearing should be overruled.

ROBERTS, J., concurs in the results of the dissent.