**Frank KELLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54130.**

Court of Criminal Appeals of Texas.

April 20, 1977.

Rehearing Denied May 18, 1977.

Jack B. Lankford, Corpus Christi (on appeal only), for appellant.

William B. Mobley, Jr., Dist. Atty., J. Grant Jones, Asst. Dist. Atty., Corpus Christi, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from an order revoking probation.

On June 15, 1973, appellant was found guilty of burglary; the court assessed punishment at eight years, probated. Condition (a) of appellant's probation was that he commit no offense against the laws of this or any other State or the United States.

On March 2, 1976, the State filed a motion to revoke appellant's probation alleging that on or about February 27, 1976, in Nueces County, appellant:

"did then and there with the intent to commit theft, voluntarily break into and enter a vehicle not classified as a habitation, namely a 1974 Ford pickup truck without the consent of James Lee Barganski, the owner of said vehicle; and in so doing violated the condition of his probation that he commit no offense against the laws of this or any other State." [1]

After hearing evidence the trial court revoked appellant's probation on this basis.

Appellant's counsel on appeal contends that the evidence is insufficient to support the revocation order. In addition, appellant has filed a pro se brief in which he contends, among other things, that his right to counsel was unfairly and unconstitutionally abridged. We overrule all of appellant's contentions and affirm.

On February 27, 1976, Jesse Molina was working as a security guard at the Fluor Construction Company in Nueces County. Sometime between 10:00 a. m. and 11:00 a. m. he saw appellant sitting in James Barganski's pickup truck, which was parked in the construction company's parking lot. According to Molina, appellant saw him and

---

1. See V.T.C.A., Penal Code, Secs. 30.04, 30.01(3).

ducked down toward the seat of the truck. Molina walked away to search for help from a patrolling security guard. He found the guard, Thomas Carnes, and the two returned to the truck, where appellant was still sitting.

Again, appellant "ducked down and sort of lunged over." The security guards then persuaded appellant to get out of the truck. While Molina was talking by radio with his supervisor, appellant ran away from Carnes.

After Carnes caught appellant, the officers and the complainant Barganski searched the pickup. They discovered that a vent window of the pickup had been pried open and that Barganski's citizens' band radio had been forcibly removed from its mounting. Pushed far back under the seat were a tire tool and a screwdriver, neither of which belonged to Barganski. On the tire tool were paint chips which matched the scratched paint of the dashboard where the entry took place.

Barganski testified that he had locked his truck when he left it in the parking lot at 5:45 that morning. He also testified that he did not give appellant or anyone else permission to enter the pickup.

Carnes testified that part of his job was to check every vehicle on the parking lot every morning "to make sure that nobody is in that parking lot during working hours and to make sure that each one of these vehicles are protected." Carnes stated that he had just finished checking the vehicles when appellant was discovered in Barganski's pickup. At the time he made his rounds, all of the vehicles on the lot were locked. He had checked Barganski's pickup only sixteen or seventeen minutes before Molina first saw appellant in the pickup.

The appellant testified that he had parked his car in the Fluor parking lot in order to apply for a job across the street. When he returned to his car, it failed to start. He stated that he then saw a man inside Barganski's pickup. This unidentified man agreed to give appellant a ride, but left shortly before the security guards apprehended appellant. On several occasions during the revocation hearing the appellant requested a polygraph examination to prove his innocence. In accord with this request the court recessed the hearing for three weeks. Appellant was given an opportunity to submit to a polygraph examination but refused to do so.

We overrule the contention that the evidence is insufficient to support the revocation order,[2] as we did when faced with similar facts in *Chenault v. State*, 494 S.W.2d 540 (Tex.Cr.App.1973), and *Ewing v. State*, 400 S.W.2d 911 (Tex.Cr.App.1966).

We also overrule appellant's pro se contention that he was deprived of competent counsel. The record reflects that the court appointed an attorney, Leo Duran, to represent appellant. Twice thereafter, Duran attempted to discuss the case with appellant, but appellant refused to talk with Duran. At these meetings appellant told counsel that his family had retained an attorney named Cromwell to represent him. However, the record clearly reflects that Cromwell was not employed to act as appellant's attorney but was only hired to do investigatory work.

At the revocation hearing, the trial court was informed of this dispute between appellant and his appointed counsel and of appellant's alleged employment of Cromwell.

Then, in response to a comment by one of the prosecutors, the court acknowledged that appellant had the right to represent himself. Shortly thereafter, the court stated:

---

2. In doing so, we once again point out that a revocation order need only be supported by a preponderance of the evidence, *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex.Cr.App.1974), and that in a revocation proceeding the trial judge is the trier of the facts and the sole judge of the credibility of the witnesses and the weight to be given to their testimony, e. g., *Farmer v. State*, 475 S.W.2d 753, 754 (Tex.Cr. App.1972). We also observe that in a probation revocation, as in other cases, evidence of flight is a circumstance from which an inference of guilt may be drawn. *Scamardo v. State*, supra, 517 S.W.2d at 297.

"Let the record show that Mr. Duran was appointed to represent the Probationer when he indicated that he did not have a lawyer and did not have money enough to employ a lawyer and needed an attorney appointed, and I believe the record will show other things that the Probationer just stated as well as the other attorneys have said in the case. So, we're going to go ahead and proceed."

The court then informed appellant that he had a right to consult with Mr. Duran during the hearing, but that he was not required to do so.

During the court's admonishment of the appellant, the court asked appellant if he understood the allegations of the motion to revoke probation. Appellant replied:

"No, sir, I really don't, but I haven't had no attorney actually to give me the legal advice on it."

However, the appellant did acknowledge that he had had a copy of the motion to revoke for more than ten days.

Subsequently, after appellant pleaded untrue to the motion to revoke, the court asked appellant, "Are you insane?" Appellant replied:

"No, sir, I am not. I am fully competent of, you know, common sense, but not legally. I really don't have no knowledge of this happening at this moment."

The court then proceeded to hear evidence. The hearing was stopped several times to enable counsel and the court to explain to appellant precisely what was occurring. On other occasions appellant asked questions of witnesses and otherwise participated in the lawsuit. However, the record is unequivocal in showing that it was appellant's court-appointed counsel who conducted appellant's defense: Counsel thoroughly cross-examined the State's witnesses in such a way as to make more plausible appellant's defensive theory. Counsel also helped appellant get the opportunity to take a polygraph examination.

■ The trial court should not have required appellant to represent himself when appellant attempted to refuse the services of his appointed counsel. *Thomas v. State*, 550 S.W.2d 64 (Tex.Cr.App.1977); decided this day. The court should have required appellant to accept appointed counsel since appellant did not waive counsel, did not seek to represent himself, and did not show adequate cause for appointment of a different attorney. *Thomas*, supra, and authorities there cited.

■ However, the record reflects that counsel for this appellant, unlike the attorney in *Thomas*, actively participated in the trial, as, to a lesser extent, did appellant. Thus, the trial court's actions had the effect of giving appellant his rights as guaranteed by Article 1, Section 10 of our Texas Constitution. See *Landers v. State*, 550 S.W.2d 272 (Tex.Cr.App.1977); delivered January 5, 1977; opinion on rehearing delivered this day.

Because appellant was adequately and ably represented, we conclude that the trial court's error was cured. *Thomas v. State*, supra, is therefore distinguishable.

Appellant's contention is therefore overruled. In addition, we have examined appellant's remaining pro se contentions; they are without merit and are also overruled.

The judgment is affirmed.