Opinion issued July 30, 2009












     


In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00824-CR




LEEROY CESAR CARBALLO, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 1097497




O P I N I O N

          The jury found appellant, Leeroy Cesar Carballo, guilty of aggravated robbery.


 
After finding one enhancement allegation to be true, the jury assessed punishment at
40 years in prison. 
          In four issues, appellant complains that (1) he received ineffective assistance
of counsel during the punishment phase; (2) “the trial court erred by not sua sponte
permitting appellant to testify to his version of events and by refusing to permit
appellant to read his statement about the events for which he was standing trial”; (3)
“the trial court erred in denying appellant’s motion for mistrial after the prosecutor,
in closing argument, violated appellant’s state and federal constitutional right to
remain silent”; and (4) the evidence was factually insufficient to support the judgment
of conviction. 
          We affirm. 
Background
          On Halloween night 2006, Luis Solis drove his car to a local convenience store
to purchase a beer for his cousin. When he got out of his car, Solis noticed a
man—later identified as appellant—near the pay phone outside the store. As he was
leaving the store, Solis heard a noise. Solis’s cousin had been working on Solis’s car
that night, and Solis thought that the noise may be his muffler falling off his car. He
went to the back of the vehicle and knelt down to check the muffler. Solis then heard
appellant say to him from behind, “Nice car.” 
          Solis stood up to say “thank you.” At that point, appellant demanded Solis’s
car keys. Solis refused to give appellant the keys, and appellant pulled a handgun
from his jacket pocket. Solis continued to refuse to hand over his keys. Appellant
raised the handgun and pointed it at Solis’s head. Solis grabbed appellant’s arm. The
gun fired and the bullet grazed Solis’s head. Solis punched appellant, and appellant
fired the weapon shooting Solis in his shoulder. Solis punched appellant again, and
appellant shot him in the chest. The two men fell to the ground with Solis on top of
appellant, and Solis grabbed the gun from appellant’s open hand. The two men stood
up, and Solis shot appellant twice in the region of his face and neck. Solis then saw
appellant get into a pickup truck that had pulled up to the scene. Solis fell to the
ground and tossed the handgun a few feet away. Solis called his wife and then 9-1-1
on his cell phone. 
          When the first police officer arrive, Solis told the officer that he had been
robbed by a Hispanic man wearing blue and that he had seen the man leave in a
pickup truck. A short time later, appellant walked into a nearby fire station and
collapsed. Both Solis and appellant were taken to the hospital for treatment. 
          Solis was placed in a medicated coma for one month in the hospital. When he
awoke, he picked appellant out of a photographic lineup. 
          Appellant was indicted for aggravated robbery. He did not testify during the
guilt-innocence phase of trial, but did testify during the punishment phase. After
appellant was convicted of aggravated robbery, this appeal followed. 
Factual Sufficiency
          In his fourth issue, appellant challenges the factual sufficiency of the evidence 
to support his conviction.


 
Factual Sufficiency Standard of Review and Elements of the Offense 
          An appellate court can deem the evidence to be factually insufficient in two
ways: (1) the evidence supporting the conviction is “too weak” to support the
factfinder’s verdict or (2) considering conflicting evidence, the factfinder’s verdict
is “against the great weight and preponderance of the evidence.” Laster v. State, 275
S.W.3d 512, 518 (Tex. Crim. App. 2009) (citing Watson v. State, 204 S.W.3d 404,
414–15 (Tex. Crim. App. 2006)). The Court of Criminal Appeals has set out three
rules for a court of appeals to follow when conducting a factual sufficiency review:
(1) all of the evidence must be considered in a neutral light and not in a light most
favorable to the explicating verdict; (2) the evidence may be found to be factually
insufficient only when necessary to prevent manifest injustice; and (3) an explanation
must be provided regarding why the evidence is too weak to support the verdict or
why the conflicting evidence greatly weighs against the verdict. Id. In addition,
when conducting a factual-sufficiency review, a court of appeals must defer to the
jury’s findings Id. (citing Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997)).
          A person commits robbery if, in the course of committing theft, as defined in
Chapter 31, and with intent to obtain or maintain control of property, he, inter alia,
intentionally or knowingly places another in fear of imminent bodily injury or death.
Tex. Penal Code Ann. § 29.02(a) (Vernon 2003). Theft is the unlawful
appropriation of property with the intent to deprive the owner of the property. Tex.
Penal Code Ann. § 31.03 (Vernon Supp. 2008). A person commits aggravated
robbery when he commits robbery as defined in section 29.02, and he uses or exhibits
a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003). 
Analysis
          In conducting a factual sufficiency review, we must consider the most
important evidence that the appellant claims undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Here, appellant contends that
the testimony of the complaining witness, Luis Solis, was not credible. At trial,
appellant’s defensive theory was that Solis had been the aggressor, not appellant. 
          Appellant points to Solis’s own testimony that he had a criminal history of
burglary and family-violence assault. At the time of trial, Solis testified that he was
on deferred adjudication community supervision for burglary. He acknowledged that
the State had filed a motion to revoke his deferred adjudication community
supervision based on a pending family-violence assault indictment in which Solis was
alleged to have assaulted his common-law wife. Solis admitted that he had also been
previously prosecuted for at least one other family-violence assault. 
          Appellant also contends that the substance of Solis’s testimony is not credible.
Appellant asserts that “[Solis’s] story stretches credulity and would be difficult to
believe if it had been told by a person with no history of deceit.” 
          Appellant first takes issue with Solis’s testimony that he went to the
convenience store to purchase a beer for his cousin, who had been making repairs to
Solis’s car. Appellant points out that “the car went with [Solis] to the store, and the
cousin did not.” Appellant speculates that it is more likely that Solis purchased the
beer for himself, but could not admit to this because alcohol consumption is a
violation of the terms of his community supervision. 
          Appellant points out that Solis’s injuries from being shot twice by appellant
were extensive and life-threatening. Appellant asserts that Solis’s testimony that he
fought back against appellant and gained control of the gun after sustaining such
serious injuries is not plausible. Appellant contends that it is more likely that Solis’s
“wounds occurred after Appellant’s [wounds] and that [Solis], in all likelihood, was
the initial aggressor.” 
          Appellant asserts that the “ultimate location of the gun’s recovery also suggests
[Solis] was the aggressor.” Solis testified that appellant shot him, he hit appellant,
the two men fell to the ground, Solis gained control of the gun, shot appellant,
appellant staggered to a waiting truck, Solis collapsed to the ground, and then Solis
tossed the gun a few feet away. Appellant asserts that Solis’s testimony “makes little
sense” because “[a] victim in the wake of a terrifying, brutal robbery would not take
pains to separate himself from his only means of defense.” Appellant continues that
“[i]t makes far more sense that Appellant, after surviving the complainant’s attack,
sought to get away from the disabled, though still dangerous, complainant, and,
having no use for the weapon, dropped it at a distance from [Solis] as Appellant
entered his own . . . vehicle to flee.” 
          Appellant also notes that appellant was employed at the time of the robbery but
that Solis was not. Appellant asserts that Solis “would have been more desperate for 
money and more tempted to steal.”


 
          The only direct evidence offered during the guilt-innocence phase of trial
regarding what actually occurred between Solis and appellant was Solis’s testimony. 
Not only did Solis give a detailed account of what actually happened, he also denied
on cross-examination that he was the aggressor on the night in question. In other
words, the determination of appellant’s guilt boiled down to whether the jury found
Solis’s testimony credible. Appellant does not cite an objective basis in the record
to show that the great weight and preponderance of the evidence contradicts the jury’s
verdict. Rather, the evidence cited and argument offered by appellant in support of
his factual-sufficiency challenge pertains to Solis’s credibility.
          We afford almost complete deference to a jury’s determination based on an
evaluation of credibility. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App.
2008). A jury may choose to believe all, some, or none of the testimony presented. 
Id. at 707. The jury is the sole judge of the credibility of the witnesses and the weight
to be given their testimony. Id. Here, the jury resolved the issues of weight and
credibility in favor of the State’s theory that appellant was the aggressor and against
appellant’s theory that Solis was the aggressor. We defer to that determination. See
id.
          After reviewing the evidence in a neutral light, we conclude that the evidence
supporting the conviction is not too weak to support the jury’s verdict, nor is the
jury’s verdict against the great weight and preponderance of the evidence. We hold
that the evidence is factually sufficient to support appellant’s conviction for
aggravated robbery.
          We overrule appellant’s fourth issue. 
Denial of Motion for Mistrial
          In his third issue, appellant contends, “The trial court erred in denying
appellant’s motion for mistrial after the prosecutor, in closing argument, violated
appellant’s state and federal constitutional right to remain silent.” 
          During closing argument, the State responded to appellant’s argument that
Solis was the aggressor. The prosecutor argued, 
Now, let’s talk about what did happen in this case. You’ve got a guy
who, on Halloween night, is shot. He’s coming to get beer. He comes
in to buy a beer. I don’t know what would have made him so outraged
between then and the beer that he would decide to attack somebody. But
anyway, he goes in, he buys beer. He comes back out. He’s looking at
the muffler on his car. They’ve just been working on the car. He’s
looking at a muffler on the car, making sure they’ve put it back on right. 
Bends down, looks at the muffler, Hey, nice car. Give me the keys. 
Tells you he turned around, thought the guy was joking, looked at him.
 
No, seriously, the guy shows him the gun. And you bet—you bet
when the guy showed him the gun and you—part of your job in this case
is to evaluate the witnesses’ credibility. Mr Carballo [appellant] didn’t
get up on the stand and tell you, No, sir, pardon me—
 
[Defense counsel]: Your Honor, may we approach the bench? 
          At that point, a discussion was held at the bench, but was not recorded. 
Following the discussion, the trial court told the jury: “Ladies and gentleman, you’re
instructed to disregard the last comment by the prosecutor.” The defense then moved
for a mistrial, which the trial court denied.
          The prosecutor then continued, 
Excuse me. I didn’t mean to say Mr. Carballo. What I meant to say was
Mr. Solis did not get on the stand; and that’s what I meant to say, was
Solis instead of Carballo. Mr. Solis did not get on the stand and say,
you know, I told him—excuse me—I’m sorry, sir. No. He told you
exactly what he said. He told you the truth. He didn’t paint the picture,
try to put himself out to be any more of an angel than he was in this
situation. A guy showed him a gun; and he said, Back the fuck off or
I’ll kick your ass. He didn’t come up here and try to paint any other
picture. He told you exactly what happened. 
          On appeal, appellant complains that the prosecutor’s remark that “Mr Carballo
didn’t get up on the stand and tell you” was an improper comment on appellant’s
failure to testify during the guilt-innocence phase. Appellant correctly points out that
a comment on a defendant’s failure to testify violates a defendant’s state and federal
constitutional rights against self-incrimination and the provisions of Texas Code of
Criminal Procedure article 38.08. U.S. Const. amend. V; Tex. Const. art. I, § 10;
Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005). A prosecutor’s comment
amounts to an impermissible comment on a defendant’s failure to testify only if, when
viewed from the jury’s standpoint, the comment is manifestly intended to be, or is of
such character that a typical jury would naturally and necessarily take it to be, a
comment on the defendant’s failure to testify. Cruz v. State, 225 S.W.3d 546, 548
(Tex. Crim. App. 2007); Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App.
2001). 
          Even assuming that the prosecutor’s comment was an impermissible comment
on appellant’s failure to testify, the trial court did not err by denying appellant’s
motion for mistrial. A mistrial is an extreme remedy for prejudicial events occurring
during the trial process. See Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App.
2007). When the trial court sustains an objection raised on the basis of improper jury
argument and instructs the jury to disregard, but denies a defendant’s motion for a
mistrial, we review the trial court’s decision to deny a mistrial under an abuse of
discretion standard. See Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App.
2004); see also Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).
          The Court of Criminal Appeals has determined that the appropriate test for
determining whether a trial court abused its discretion by denying a motion for a
mistrial is a tailored version of the Mosley test. See Archie, 221 S.W.3d at 700;
Hawkins, 135 S.W.3d at 77 (discussing Mosley v. State, 983 S.W.2d 249, 259–60
(Tex. Crim. App. 1998)). To determine whether the trial court abused its discretion
by denying the mistrial, we balance three factors: (1) the severity of the misconduct
(the magnitude of the prejudicial effect of the prosecutor’s remarks); (2) the measures
adopted to cure the misconduct (the efficacy of any cautionary instruction by the
judge); and (3) the certainty of conviction absent the misconduct (the strength of the
evidence supporting the conviction). See Archie, 221 S.W.3d at 700.
          In analyzing the first factor, it appears from record that the prosecutor did not
deliberately refer to appellant’s failure to testify during the guilt-innocence phase. 
Rather, the reference to appellant was inadvertent. When read in context, it is
apparent that the prosecutor had intended to refer to “Mr. Solis,” but misspoke and
said “Mr. Carballo.” In addition, the prosecutor’s comment was brief and not
repeated. Although the nature of the constitutional right affected by the prosecutor’s
remark was serious, the prejudicial effect was lessened by the absence of flagrancy
and persistency. See Perez v. State, 187 S.W.3d 110, 112–13 (Tex. App.—Waco
2006, no pet). 
          A review of the second factor reveals that curative measures were taken. The
trial court instructed the jury to disregard the prosecutor’s comment. The jury charge
also instructed the jury that it could not consider, for any purpose, appellant’s
decision not to testify. Any harm resulting from the improper comment was further
cured when the prosecutor corrected himself and clarified that he had intended to
refer to Mr. Solis and not to appellant. 
          In most circumstances, an instruction to disregard improper argument is
considered a sufficient response by the trial court. See Wesbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000). Error in a prosecutor’s improper jury argument
concerning a defendant’s failure to testify may be cured by an instruction by the trial
court to disregard the comment. See Longoria v. State, 154 S.W.3d 747, 763–64
(Tex. App.—Houston [14th Dist.] 2004, pet. ref’d); Linder v. State, 828 S.W.2d 290,
300 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d). Moreover, a prosecutor’s
self-corrective action is a relevant consideration in determining harm. See Hawkins,
135 S.W.3d at 84. 
          “[T]he . . . presumption that an instruction [to disregard] generally will not cure
comment on failure of the accused to testify . . . has been eroded to the point that it
applies only to the most blatant examples. Otherwise, the Court has tended to find
the instruction to have force.” Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim.
App. 1995) (quoting Waldo v. State, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988)). 
In light of the brevity of the remark at issue and its inadvertent nature, nothing in the
record shows the comment was so “blatant” that it would have rendered an instruction
to disregard ineffective. See Moore v. State, 999 S.W.2d 385, 405–06 (Tex. Crim.
App. 1999).
          Finally, considering all the evidence, the certainty of appellant’s conviction
absent the allegedly improper comment was great. Solis’s testimony regarding the
events surrounding the robbery was detailed and more than sufficient to support
appellant’s conviction. As discussed in the preceding section, the jury, as final arbiter
of the weight and credibility of the evidence, believed Solis’s testimony and rejected
appellant’s defensive theory that Solis was the aggressor. We conclude that the
certainty is high that appellant would have been convicted regardless of the
complained-of comment.
          Balancing the three Mosley factors, we hold that the trial court did not abuse
its discretion by denying appellant’s motion for mistrial. We overrule appellant’s
third issue.
Ineffective Assistance of Counsel
          In his first issue, appellant contends that he “received ineffective assistance of
counsel as his trial counsel did not abide by his request to testify on his own behalf
in the punishment phase of trial.”
          As mentioned, appellant did not testify during the guilt-innocence phase of
trial, but did testify during the punishment phase. In his brief, appellant
acknowledges that, on direct examination, defense counsel “questioned [him] about
his criminal history, his previous confinement, his home life since imprisonment, his
work history, his difficult childhood, his schooling, his parents, his siblings, his
children, and the injuries that he sustained during the robbery for which he is standing
trial.” The crux of appellant’s ineffective of counsel claim is that “defense counsel
never asked Appellant what actually happened during the robbery for which
Appellant had just been convicted.” 
          On cross-examination, when asked whether he accepted responsibility for the
robbery, appellant responded that he had pleaded not guilty to the offense. The State
asked appellant whether he was saying that the jury “got it all wrong” with respect to
its finding of guilt. Appellant responded that because he had “failed to testify” in the
guilty-innocence phase, “the jury never got to hear my side of the story.” He said the
jury only “heard Mr. Luis Solis’s story of the facts of his angles of where it happened
of what he said happened. No one else saw what happened, and only me and Mr.
Luis know exactly what happened.” 
          On further questioning, appellant stated that “I did not rob Mr. Luis Solis.” 
Appellant asked the prosecutor, “[W]ould you like to hear my version of the story?
Is that possible? I never had a chance.” After the prosecutor asked appellant a few
more questions, appellant asked, “[Y]ou want me to explain to you exactly
everything, my statement of what happened that night?” The prosecutor replied,
“You can—your lawyer will have you on redirect, and he can go through it if that’s
what you guys want to do.” 
          After the prosecutor finished his cross-examination of appellant, defense
counsel indicated that he had no further questions. The trial court then told appellant
that he could “stand down.” At that point, the following exchange occurred:
[Appellant]: I want to see if I can read something to the jury. Is this the
last I’ll be able to talk to them?
 
The Court: Yes. What are you asking?
 
[Appellant]: I asked my lawyer if I could read a letter to the jury.
 
[The prosecutor]: Judge, I’m going to object to him reading. First of
all, that invades the province of the jury. Second of all, I’d like to see
a proffer of that before we know what’s going on, what’s about to be—
 
The Court: You have a copy of it? How many pages? 
 
[Appellant]: It’s just this right here and this part right here, this page
right here. 
 
[Defense counsel]: The prosecution objected to it and I have nothing to
say to the objection.
 
The Court: All right. Objection is sustained unless you want to continue
this.
 
[The prosecutor]: I mean—
 
The Court: Are you opposed to him reading it?
 
[The prosecutor]: I have no problem with him testifying.
 
The Court: Testifying is different from reading a statement.
 
[The prosecutor]: Yes, Judge, we’re opposed to him reading from the
statement.
 
The Court: All right. Objection is sustained.
          Appellant contends that he received ineffective assistance of counsel during the
punishment phase because defense counsel did not question him about his own
version of the events on the night in question. Appellant correctly points out that a
criminal defendant has a fundamental constitutional right to testify in his own
defense. Johnson v. State, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005). He asserts
that he had “a fundamental right” to testify regarding “his conduct in the charged
offense.” Appellant contends that by failing to ask him “[w]hat happened on the
night in question,” defense counsel “effectively denied Appellant his fundamental
constitutional right to ‘be heard’ and to ‘present a complete defense.’” Appellant
further contends that had he “been given an opportunity to explain his conduct on the
night of the burglary [sic], there is a reasonable probability that the jury would have
believed Appellant and the resulting punishment would have likely been different.” 
          Allegations of ineffective assistance of counsel must be firmly founded in the
record. Bone v. State, 77 S.W.3d 828, 833, 834 n.13 (Tex. Crim. App. 2002). To
prove ineffective assistance of counsel, appellant must show by a preponderance of
the evidence that (1) counsel’s performance fell below an objective standard of
reasonableness and (2) there is a reasonable probability that the result of the
proceeding would have been different but for the deficient performance of counsel. 
Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068
(1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). 
          A failure to make a showing under either Strickland component defeats a claim
of ineffective assistance of counsel. Rylander v. State, 101 S.W.3d 107, 110–11 (Tex.
Crim. App. 2003). If an appellant fails to prove the second “prejudice” component,
we need not address whether counsel’s performance was deficient. See Boyd v. State,
811 S.W.2d 105, 109 (Tex. Crim. App. 1991). 
          Here, appellant has not satisfied the second Strickland component. More
precisely, appellant has not shown that there is a reasonable probability that the result
of the punishment proceeding would have been different had he been permitted to
testify about the events surrounding the offense. See Johnson, 169 S.W.3d at 239–40. 
Appellant did not file a motion for new trial, and the record does not contain the
substance of the testimony that appellant claims he would have given on redirect
questioning by his defense counsel. Thus, it is not possible to determine whether the
result of the punishment proceeding would have been different if defense counsel had
questioned appellant regarding his version of the events. See Ex parte McFarland,
163 S.W.3d 743, 758 (Tex. Crim. App. 2005) (concluding that defendant cannot show
prejudice from counsel’s failure to call witnesses absent evidence that witnesses were
available to testify at trial and that their testimony would have been favorable).
          We further note that, on cross-examination by the State, appellant indicated
that he did not “rob” Solis. We can reasonably infer from this testimony that, had
defense counsel questioned appellant on redirect, appellant would have further denied
committing the offense and would have testified that Solis was the aggressor. Such
denial of responsibility would not have been beneficial to appellant. To the contrary,
during the punishment phase, a jury expects a defendant to take responsibility and to
show remorse for the offense for which he has been found guilty. If appellant had
further denied guilt, the jury, irritated by appellant’s failure to take responsibility,
likely may have imposed a harsher sentence on appellant. See Johnson, 169 S.W.3d
at 240.
          We conclude that appellant has not shown by a preponderance of the evidence
that there is a reasonable probability that the result of the proceeding would have
been different. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Accordingly, we
hold that appellant has not demonstrated that he received ineffective assistance of
counsel during the punishment phase of trial.
          We overrule appellant’s first issue. 
Appellant’s Right to Give Certain Testimony or to Read a Statement
          In his second issue, appellant contends that “the trial court erred by not sua
sponte permitting appellant to testify to his version of events and by refusing to
permit appellant to read his statement about the events for which he was standing
trial.” 
          Appellant first contends that the trial court had a sua sponte duty to act in some
manner to ensure that appellant was permitted to testify regarding his version of the
events surrounding the robbery. Appellant acknowledges that the Court of Criminal
Appeals has held that the Strickland ineffective assistance of counsel test provides
the appropriate framework for addressing an allegation that the defendant’s right to
testify was denied by his defense counsel. See Johnson, 169 S.W.3d at 235. 
Appellant also acknowledges that “to avoid the requirements of Strickland, the
defendant’s complaint must reveal error attributable to the court and not simply to
defense counsel.” See id. at 232. Appellant contends that his complaint reveals such
error. 
          Relying on the general legal principles that a defendant has the right to testify
in his own defense and has the right to a fair trial, appellant contends that the trial
court had a duty to sua sponte act to ensure that appellant was permitted to testify
about his version of the events. Appellant asserts that it was apparent to the trial
court that defense counsel was refusing to question appellant regarding the events
surrounding the offense, despite appellant’s obvious desire to provide such testimony. 
Appellant argues that the trial court erred when it did not sua sponte intervene to
permit appellant to give this testimony.
          Appellant’s reasoning is flawed. This is not a case in which the trial court
prevented appellant from testifying either in whole or in part. Instead, it is a case in
which appellant’s counsel chose, presumably for strategic reasons, not to question
appellant about the events surrounding the offense. 
          To conclude that the trial court erred by failing to require defense counsel to
question appellant about the events would be tantamount to concluding that the trial
court had a duty to interfere in the defense’s trial strategy and to inject itself into the
attorney-client relationship. Such a position is untenable and rife with conflict.
          Appellant’s complaint on appeal does not implicate “an error attributable to the
court,” rather it involves an alleged failing of defense counsel. See id. at 232. With
no error attributable to the trial court, Strickland, as noted above, provides the
appropriate framework for addressing appellant’s allegation that his desire to give
certain testimony was denied by defense counsel. See id. at 235. We conclude that
appellant has not demonstrated that the trial court erred when it did not sua sponte act
to enable appellant to testify regarding the events surrounding the offense. 
          Appellant further contends that the trial court erred “by refusing to permit
appellant to read his statement about the events for which he was standing trial.” 
Appellant again relies on his constitutional right to testify on his own behalf. As
mentioned, the State objected to appellant’s request to read a statement to the jury. 
The trial court sustained the objection.
          By his request to read a statement, appellant was asking to represent himself
during part of the punishment proceeding, but not the entire proceeding. In other
words, appellant was seeking permission for hybrid representation. Although a trial
court has discretion to allow it, a defendant has no constitutional right to hybrid
representation. See Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989);
Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). Thus, it was not error
for the trial court to sustain the State’s challenge to appellant’s reading of the
statement to the jury. See Landers, 550 S.W.2d at 280. 
          Moreover, neither the United States Supreme Court nor the Texas Court of
Criminal Appeals has held that a defendant has a constitutional right to read an
unsworn statement to the jury free from cross-examination. See Moore v. State, No.
74,059, 2004 WL 231323, at *6 (Tex. Crim. App. Jan. 14, 2004) (not designated for
publication) (citing United States v. Hall, 152 F.3d 381, 396 (5th Cir. 1998)
abrogated on other grounds by United States v. Martinez-Salazar, 528 U.S. 304, 120
S. Ct. 774 (2000)). To the contrary, a testifying defendant is subject to the same rules
governing examination and cross-examination as any other witness. See Felder v.
State, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992).
          Appellant has not demonstrated that the trial court erred when it did not
intervene to allow appellant to testify regarding his version of the events surrounding
the offense. Appellant also has not shown that the trial court erred by sustaining the
State’s objection to appellant’s reading of a statement to the jury.
          We overrule appellant’s second issue.
Conclusion
          We affirm the judgment of the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Justice Jennings, concurring.

Publish. See Tex. R. App. P. 47.2(b).